D. & E. CHAPIN, Appellants, v. BROWN BROS. *et al.*, Appellees.

1.  Contracts: RESTRAINT OF TRADE: CONSIDERATION: VALIDITY. The grocerymen of a town entered into an agreement with the plaintiffs not to buy any butter nor to take any in trade, except for the use of their families; providing that such agreement should not prevent any merchant from buying butter to retail from any regular butter buyer who bought all the butter he handled in the town for cash. The contract recited as occasion for its execution that the grocerymen found the business of purchasing butter of the farmers, and handling the same, very burdensome, and they believed the same could be better handled as an exclusive business. The plaintiffs in said agreement undertook to open rooms conveniently located for buying butter, to keep a man in attendance thereat, to accept all butter offered, and to pay as high a price therefor in cash, as the merchants or butter buyers in the town of N., in the same county, were at the time paying. The contract was to continue for two years unless sooner dissolved, and it might be terminated at any time whenever the majority of the grocerymen were dissatisfied with the agreement or with the manner in which it was carried out. This action having been brought to enjoin one of the grocerymen from engaging in the business of buying and selling butter in said town, *held*, that said contract was without consideration, and was, therefore, invalid.

2.   ———: ———.   Such contract is also invalid as being in restraint of trade, and, therefore, against public policy.

*Appeal from Buena Vista District Court.*—HON. LOT THOMAS, Judge.

MONDAY, JUNE 1, 1891.

ACTION at law to recover one hundred and fifty dollars damages, and for an injunction to restrain the defendants from pursuing the business of buying butter at Storm Lake, in Buena Vista county. Application for a temporary injunction was made to the judge in vacation. The defendants appeared and filed objections to the granting of the writ. The objections were sustained, and the plaintiffs appeal.—*Affirmed.*

*T. H. Chapman* and *C. A. Irwin*, for appellants.

*T. D. Higgs*, for appellees.

ROTHROCK, J.—It appears from the petition that in the month of March, 1890, the plaintiffs entered into a written agreement with the defendants and other parties. The following is a copy of said agreement:

" We, the undersigned grocerymen of Storm Lake, finding the business of purchasing butter of farmers and handling the same very burdensome, and of material loss to us, and believing the same could be handled as advantageously by persons who would make butter buying and handling an exclusive business, and whereas the firm of D. & E. Chapin, through their agent, assure us of their ability to handle butter to the best advantage, and that they will engage in the business extensively in our town, we make a solemn engagement and pledge ourselves to each other and to the said firm of D. & E. Chapin that we will buy no more butter or take no more in trade, except for our family use, and all butter so bought shall be delivered by the seller to the buyer's place of residence. This, however,

shall not prevent any merchant from · buying butter to retail from any regular butter buyer who buys all the butter he handles in this town for cash. It is further provided that the said firm of D. & E. Chapin, in whose favor we abandon the business, shall open rooms conveniently located for buying butter; that they shall keep a man in attendance during all business days and hours in the year from as early in the morning and until as late in the evening as the season of the year and state of the weather might seem to require. They shall accept all the butter offered, and shall pay for the same as high price in cash, or by giving check against a suitable deposit in some bank in this town, as merchants or butter buyers in the town of Newell, this county, are at the time paying in cash for a similar grade of butter, except in extreme cases, where they may be paying materially more than the markets will warrant. It is also provided that the said D. & E. · Chapin shall not direct their checks or persons taking the same to any particular store for payment. That they shall not buy in connection with any dry-goods or grocery store. Whenever a majority of the merchants signing this article of agreement are convinced that the engagements herein entered into are not being complied with, or whenever they are dissatisfied with this arrangement or the manner in which· it is being carried out, any merchant whose name is hereto appended may appoint a meeting by notifying each grocery firm in town of the time and place for the purpose of considering who may be guilty of a breach of faith in carrying out these engagements, or whether it is advisable to continue the same; and if, at such meeting, a majority of the subscribers hereto shall certify in writing that they think it advisable for the interest of the town to withdraw from this engagement, this contract ·shall become null and void. This engagement shall take effect and be in force from and after such time as when

it shall have been subscribed to by each grocery house in this town, and when the firm of D. & E. Chapin shall designate, provided they are then prepared to handle the butter, and shall continue two (2) years unless sooner dissolved, as herein provided. We also agree not to pay a higher price for eggs than shall be fixed by the said firm of D. & E. Chapin, provided said firm shall fix as high price as eggs are at the time worth to ship.

W. C. KINNE & CO.,
"FRED SCHOLLER,
"BROWN BROS.,
"J. O. DOUGLAS,
"W. A. JONES,
"GEO. E. FORD & BRO.,
"W. LOWNSBERRY,
"LIBBY & RAE,
"D. & E. CHAPIN."

It is averred in the petition that the plaintiffs, in pursuance of said written contract, came and located at Storm Lake and engaged in the business of buying butter at that place, and were at the commencement of the suit still so engaged, and have made arrangements to continue the business for the said period of two years, and that they have thus far fully complied with said written agreement, but that the defendants, in violation thereof, have opened a butter store in said town, and have engaged in the business of buying butter generally, and have thereby interfered with the plaintiffs' business, and alienated their trade to the extent of five thousand pounds of butter, upon which the plaintiffs would have realized a profit of three cents a pound, making in all one hundred and fifty dollars damages suffered by the plaintiffs. Judgment is demanded for said sum, and an injunction is prayed, restraining the defendants from continuing in said business.

1. CONTRACTS: restraint of trade: consideration: validity.

Among the several grounds of objection to the granting of an injunction we regard two of them as material. They are as follows: "*First*, that the agreement in writing is void for want of consideration, as there is no money value inuring to the benefit of the defendants herein; and, *second*, that said contract by its terms is for the purpose of creating a monopoly in purchasing and selling butter at Storm Lake, and is, therefore, in restraint of trade, to the detriment of the producers and consumers of butter at that place and in that vicinity." The history of the law upon the question of contracts in restraint of trade is an interesting subject of investigation. The books abound in cases upon the subject. Anciently all contracts were void which in any degree tended to the restraint of trade, even in a particular locality, and for a limited time. This ancient rule has been so far modified that, although agreements in general restraint of trade are invalid, because they deprive the public of the services of the citizen in the occupation or calling in which he is most useful to the community, and expose the people to the evils of monopoly, and prevent competition in trade, yet an agreement in partial restraint of trade will be upheld where the restriction does not go beyond some particular locality, is founded upon a sufficient consideration, and is limited as to time, place and person. It is accordingly everywhere now held that when one engaged in any business or occupation sells out his stock in trade and good-will he may make a valid contract with the purchaser binding himself not to engage in the same business in the same place for a time named, and he may be enjoined and restrained from violating his contract. This is about as far as contracts in restraint of trade have been upheld by the courts in this country or in England. The general principles above announced will be found in all text-books upon contracts, and find support in many adjudged cases.

We have not thought it necessary to set out or cite the cases. They will be found collected in 3 American & English Encyclopedia of Law, page 882, and the same, volume 10, page 943; 2 Parsons on Contracts, page 747.

Applying these rules to the contract under consideration we are to inquire first whether there is a sufficient consideration for the promise of the defendants and the other parties who executed the instrument not to engage in dealing in butter at Storm Lake. It is very plain that there was no money paid to them as a consideration. The plaintiffs did not purchase any stock of butter which the defendants had on hand. They paid nothing for an established plant or place of doing business, nor for the good-will of any business. So far as appears they went into the town of Storm Lake and proposed to go into the butter business if the other persons then engaged in that business would agree to quit that line of trade for two years. In all the search we have made for authority upon this branch of the controversy we have found no warrant in any precedent for holding that this is a sufficient consideration. There are cases which hold, and the law is well settled, that, where a party proposes to expend money in erecting a manufactory or other plant which may be a public benefit, subscriptions in aid of the enterprise are valid obligations. But such contracts are widely different in principle from the agreement under consideration. Suppose the plaintiffs had made a proposition to the dry-goods merchants of Storm Lake that if they would all quit the business for two years, without any consideration being paid to them for so doing, the plaintiffs would establish a dry-goods store at that place, and the proposition had been accepted; it would be a marvelous decision if any court would hold that there was any consideration for such a contract.

II. But it appears to us that the decision of the district court is manifestly right upon the question that

2. —: —.  the agreement is against public policy. It plainly tends to monopolize the butter trade at Storm Lake, and destroy competition in that business. It is not necessary that the enforcement of the agreement would actually create a monopoly in order to render it invalid, and surely where all the dealers in a commodity in a certain locality agree to quit the business, and the plaintiffs are installed as the only dealers in that line, the tendency is, for a time at least, to destroy competition, and leave the plaintiffs as the only dealers in that species of property in that locality. Such contracts cannot be enforced. AFFIRMED.