# FERD HEIM BREWING COMPANY, Respondent, v. A. G. BELINDER, Appellant.

### Kansas City Court of Appeals, December 1, 1902.

1. **Pools and Trusts: MONOPOLY: CONTRACTS: COMPETITION: DEFENSE.** Certain breweries had an agreement that they would not sell to any one indebted to either of the others for beer until he paid that debt. *Held,* the agreement tended to establish a monopoly, deprived the debtor of the benefit of competition and served to impose a penalty upon his condition, and was in conflict with the Missouri statute relating to pools and trusts, and constituted a bar to an action on an account owed to a member of the combination.

2. ——: ——: **INTENTION.** The intention of the parties to a contract will not avail when its effect is within the statute.

3. ——: ——: ——: ——: **RIGHT TO SELL.** One may exercise his choice as to whom he will sell but he can not enter into a contract whereby he binds himself not to sell, for he thereby barters away his right of choice and destroys the very right he claims the privilege of exercising. (Cases considered.)

4. ——: ——: ——: ——: **ACT OF COMBINATION.** Whether an act is harmful and unlawful is not determined by the fact that the same character of act could be committed harmlessly by one, since the doing of the act by a number may give it an impulse not only oppressive to individuals but mischievous to the public at large and thus give criminality to an act that would be perfectly innocent in a legal view when done by an individual. (Cases considered.)

5. ——: ——: ——: ——: **PUBLIC: PRIVATE RIGHTS.** Whether a combination is lawful or unlawful is ascertained by its character and purpose as it affects the rights of the public to unrestrained trade or as it affects the private rights of individuals, and an agreement not to sell to one in debt is an invasion of his rights since he has a right to buy which equals the right of another not to sell, and the latter's right can not be stretched to interfere with the former's right to buy of others.

6. ——: ——: ——: ——: **COMMON LAW: STATUTE.** A debtor, to fix a statutory penalty of disability to collect a debt by reason of an unlawful combination must show not merely a combination unlawful at common law, but likewise unlawful under the statute.

7. ——: ——: ——: ——: DEFINITION. Competition is the struggle between rivals for the same trade at the same time; an l without trade, which is the mother of competition, there can be no competition; and whatever restrains trade restrains competition in the same degree; and an agreement that no member of a combination shall sell to a debtor of one of them cuts off the right of the other members to compete for the debtor's trade, and is unlawful. (Cases considered.)

Appeal from Jackson Circuit Court.—*Hon. John W. Henry,* Judge.

REVERSED.

*Wm. C. Forsee* for appellant.

(1) If respondent was a party to an agreement to the effect that none of the brewers would sell to a retailer as long as that retailer was in debt to any other party to the combination, it was for the jury to say whether such agreement was one regulative of the price of beer or "designed or made with a view to lessen, or which tended to lessen full and free competition." Gutridge v. Railroad, 105 Mo. 520; Tyler v. Hall, 106 Mo. 313; Williamson v. Fisher, 50 Mo. 198; Kuhl v. Meyer, 42 Mo. App. 474; Higgins v. Railroad, 43 Mo. App. 547; Bender v. Railroad, 137 Mo. 240. (2) The policy of the law, irrespective of the statute, favors full and free competition. Contracts in restraint of trade were invalid at common law. And while we have found no case where the facts showed an agreement amongst the contracting parties to refrain from selling to a retailer who was at the time indebted to another manufacturer, we think the principles announced by the eminent authorities next hereinafter cited are strictly applicable to the case at bar. Lead Co. v. Paint Store, 80 Mo. App. 247; State v. Insurance Co., 152 Mo. 1; Handle Co. v. Handle Co., 59 S. W. 707; United States v. Pipe & Steel Co., 54 U. S. App. 749, 29 C. C. App. 151, 85 Fed. Rep. 282; Salt Co. v. Guthrie, 35 Ohio St. 666; Ertz v. Produce Exchange, 84 N. W. 743; Trust Co.

Vol 97 app—5.

v. McDonald, 146 Mo. 480; United States v. Knight, 156 U. S. l. c. 15, 16; United States v. Trans-Missouri Frt. Assn., 166 U. S. 342; Cohen v. Berlin, 59 N. E. 906; Greenhood Public Policy, 642; Bailey v. Ass'n Master Plumbers, 52 S. W. 853.

*Ben T. Hardin* for respondent.

(1) Is it unlawful, within the meaning of our anti-trust statute, for a number of persons engaged in selling a common article, to agree that they will not sell to any person, while he is indebted to any one of such number? R. S. 1899, secs. 8965, 8966, 8970. (2) Agreements designed and made for the protection of merchants are not within the inhibition of the statute, although they tend indirectly and incidentally to lessen competition. Anderson v. United States, 171 U. S. 675; United States v. Joint Traffic Assn., 171 U. S. 568; Hopkins v. United States, 171 U. S. 579; Pipe & Steel Co. v. United States, 175 U. S. 211-244; Dueber v. Howard, 55 Fed. Rep. 851; In re Green, 52 Fed. Rep. 104; Brett v. Ebel, 51 N. Y. S. 575. (3) Penal statutes should be strictly construed, and no offense not clearly within the letter and spirit of the act should be included by construction. State ex rel. v. Associated Press, 159 Mo. 410, 467; Dudley v. Tel. Co., 54 Mo. App. 391; Connell v. Tel. Co., 108 Mo. 457; State ex rel. v. Smith, 114 Mo. 180; State v. Bryant, 90 Mo. 537. (4) What one man may lawfully do singly, two or more may lawfully agree to do jointly. Hunt' v. Simonds, 19 Mo. 583; Bohn v. Hollis, 54 Minn. 223; Kimball v. Horman, 34 Md. 407; Bowen v. Murdock, 96 Mass. (14 Allen) 499; Delz v. Winfree, 6 Tex. Civ. App. 11-15; Cote v. Murphy, 159 Pa. St. 420. Therefore, an agreement among several merchants not to sell to insolvents is valid. This was expressly ruled in Texas. Delz v. Winfree, 6 Tex. Civ. App. 11-15.

ELLISON, J.—The plaintiff is a corporation engaged in the manufacture of beer, and defendant was

a customer of the plaintiff. This suit is on an account for beer sold to defendant, and plaintiff prevailed in the trial court. The principal point made here for reversal is based upon chapter 143 of the statute in relation to pools, trusts and conspiracies. It is provided in said statute (sec. 8965): Any corporation, partnership or individual who shall become a member of any pool, trust or combination to fix the price of any article of merchandise; or to limit the amount or quantity of any article of manufacture, shall be guilty of conspiracy to defraud. And (sec. 8966): All contracts or combinations designed with a view to lessen, or which tend to lessen full and free competition in the importation, manufacture or sale of any article or product in this State; and all contracts and combinations whereby it is proposed that any person doing business in this State shall deal in or sell any particular article and shall not during the continuance of such combination deal in or sell any competing article, are hereby declared to be against public policy, unlawful and void, and the parties thereto shall be adjudged guilty of a conspiracy to defraud. And (sec. 8970): "Any purchaser of any article or commodity from any individual, company or corporation transacting business contrary to any provision of the preceding sections of this article shall not be liable for the price or payment of such article or commodity, and may plead this article as a defense to any suit for such price or payment."

The only evidence which we need consider was that given by plaintiff's chief officer and that was that plaintiff and the other brewery corporations of Kansas City had an understanding and agreement that they would not sell to any one who was in debt for beer to either of the others, until he paid that debt. The statute aforesaid (sec. 8966) denounces any agreement, arrangement or combination made with a view to lessen, or which tends to lessen, full and free competition in the importation, manufacture *or sale* of any article. By such understanding and agreement between the brewers, no brewer would sell to a person indebted to another

brewer for beer, and consequently the party indebted was deprived of the right of having them to compete for his trade. He was deprived of the benefit of competition and left at the mercy of his particular creditor who could impose any price he saw fit. Suppose the retail dealers at any place were to enter into an agreement that they would not sell to any one who was indebted for goods to either of the others; would not the effect be that the debtor would be confined to the one merchant and subject to any extortion he might conclude to impose? It would not be contended, at least it ought not, that a lawful agreement could be made that but one member of the whole number could sell to certain persons or classes of persons. Yet the effect of the agreement is as broad as that. When the others agree not to sell to the debtor of the creditor member, they deprive the debtor of the right to buy of any other than the creditor. The agreement imposes a penalty upon a condition which is not unlawful, but merely unfortunate. The effect and tendency of such agreements are wrong and are not only under the ban of the statute aforesaid, but they are against public policy. Many worthy people, through misfortune, become indebted, and they ought not to be met with an agreement which deprives them of the common right of citizenship to buy of whoever keeps for sale the article wanted. They ought not to be made to labor under a disability which is not imposed upon their more fortunate fellows. It is doubtless true that in many instances some sort of extra legal mode to collect a just debt from a dishonest debtor would find favor in the mind of most men. But we can not look to individual instances.

The question is, what is the tendency of the agreement? and what are the opportunities for oppression which the statute is designed to suppress? It does not affect the character of the agreement proven that the brewers only intended a worthy purpose. Intention will not avail when the effect is within the statute. And it has been held by the highest authority that though

no imposition was consummated by the raising of prices; and even though the agreement was necessary to curb unjust or ill-advised competition, yet if the effect of the agreement was within the prohibition of the law, it was void (United States v. Addyston Pipe Co., 54 U. S. App. 747) ; and that, "in order to vitiate a contract or combination it is not essential that its result should be complete monopoly; it is sufficient if it really tends to that end and to deprive the public of the advantages which flow from free competition." United States v. Knight Co., 156 U. S. 16. And that, the necessary effect of the agreement is the criterion "no matter what the intent was on the part of those who signed it." United States v. Freight Assn., 166 U. S. 342. Those cases were examined and approved by the Supreme Court of Missouri in State ex inf. v. Ins. Co., 152 Mo. 1, and in our opinion much of the principle stated in the latter case can be fairly applied to this.

It is no answer to the view we have taken to say that any one has a right to refuse to sell to whomsoever he may elect. It is true he may so refuse; but the argument, properly applied, is disastrous to those who advance it. Any one may exercise a choice as to whom he will sell his goods, but he can not enter into a contract whereby he binds himself not to sell, for in such instance he barters away his right of choice and destroys the very right he claims the privilege of exercising. After entering upon such agreement he is no longer a free agent.

The cases are few where it has ever been held that the individual right may be lawfully exercised collectively, by contract. The cases of MacAuley Bros. v. Tierney, 19 R. I. 255, and Bohm Mfg. Co. v. Hollis, 54 Minn. 223, are among them. But it will be noticed that those cases, and any others with similar views, are not based upon statutes. And though decided on what is asserted to be general principles of law, they are not supported by the great weight of authority. Cases supra; Bailey v. Master Plumbers, 103 Tenn. 99; Nester v. Brewing Co., 161 Pa. St. 473; Moore v. Bennett, 140

Ill. 69; People v. Sheldon, 139 N. Y. 251; Milwaukee Builders v. Niezerowski, 95 Wis. 129; Chapin v. Brown, 83 Iowa 156; India Bagging Assn. v. Rock, 14 La. Ann. 168; Vulcan Powder Co. v. Powder Co., 96 Cal. 510; Anderson v. Jett, 89 Ky. 375.

Since the foregoing was written, additional briefs have been filed presenting arguments against the views therein stated; which, on account of the importance of the question, we will answer—though, perhaps, causing some repetition of what has already been said.

Prominent among the points advanced is one based on the ground that the agreement not to sell to any one in debt to any member for beer is not a wrongful agreement at common law. And that it is not a wrongful agreement under the statute aforesaid.

In support of the assertion that the agreement not to sell beer to defendant was not wrongful, plaintiff (planting itself on the undoubtedly correct proposition that a dealer has the absolute right, whether prompted by caprice, malice or otherwise, to refuse to sell to another) has said that as it had then the lawful right to refuse to sell beer to defendant, and that whatever one had a lawful right to do, a number had a lawful right to agree to do. That is, that the lawful right of an individual, acting singly, could not become unlawful by the combined action of several to do the same thing. This expression is deceptively fair; so much so, that it has caught the mind of learned judges in some cases and has been stated in opinions, and made the basis of decisions. But there was never a greater error. If we can demonstrate its fallacy we will have succeeded in destroying the greater part of plaintiff's argument. The doing of intentional harm to others, or to the public, is wrong and in most cases is unlawful. But the doing an act, however bad the motive, if not harmful, is not unlawful. If, however, the act is done in a manner (which may include the number doing it) as to be harmful, then it may be unlawful. It is the unwarranted wrong committed which determines the unlawful character of the act. It is not determined by the fact

that the same character of act could be committed harmlessly by one. There are acts which become wrongful on account of the number doing such acts; manifestly, the right of a single individual is of no consequence in determining the character of the act of the whole number. Thus, it is not unlawful for one man to stop on a highway reserved for pedestrians, yet it is clearly unlawful for a number to do so, especially by concerted action. In such instance the act of the one man was not harmful to any appreciable extent, while the act of the number obstructed the highway and became unlawful. And so it is not unlawful, nor appreciably harmful, for one dealer to raise the price of an article of absolute necessity; for in the natural course of trade, other dealers will supply the necessity at a price fixed by competition. But it is unlawful and harmful for all dealers to combine and by agreement raise the price. The act of the one dealer passes unnoticed by the public, while the same act by the combination interferes with trade and creates distress. Judge GIBSON of the Supreme Court of Pennsylvania, said:

"There is between the different parts of the body politic a reciprocity of action on each other, which, like the action of antagonizing muscles in the natural body, not only prescribes to each its appropriate state and condition, but regulates the motion of the whole. The effort of an individual to disturb this equilibrium can never be perceptible, nor carry the operation of his interest on that of any other individual, beyond the limits of fair competition; but the increase of power by the combination of means, being in geometrical proportion to the number concerned, an association may be able to give an impulse, not only oppressive to individuals, but mischievous to the public at large; and it is the employment of an engine so powerful and dangerous, that gives criminality to an act that would be perfectly innocent, at least in a legal view, when done by an individual." Commonwealth v. Carlisle, Brightly (N. P.) 36.

Judge THAYER, of the United States Circuit Court

of Appeals, said in Hopkins v. Oxley Stave Co., 83 Fed. Rep. 912, 920, "that the law will sometimes take cognizance of acts done by a combination which would not give rise to a cause of action if committed by a single individual, since there is a power in numbers, when acting in concert, to inflict injury, which does not reside in persons acting separately."

In Bailey v. Master Plumbers, the Supreme Court of Tennessee said: "A combination has hurtful powers and influences not possessed by the individual. It threatens and impairs rivalry in trade, covets control in prices, seeks and obtains its own advancement at the expense and in the oppression of the public." 103 Tenn. 118.

It was said by the Supreme Court of Connecticut, on the same subject: "Any one man, or any one of several men, acting independently is powerless; but when several combine and direct their united energies to the accomplishment of a bad purpose, the combination is formidable. Its power for evil increases as its numbers increase." State v. Glidden, 55 Conn. 46, 75. And such is the view of the United States Circuit Court of Appeals, as expressed by Justice HARLAN, in Arthur v. Oakes, 63 Fed. Rep. 310. No case upholding the right of combination in competition with a business rival has been more fully considered than that of Mogul Steamship Co. v. McGregor. It was tried before Lord COLERIDGE and his judgment is found reported in L. R. 21 Q. B. Div. 544. On appeal to the queen's bench his judgment was affirmed by a divided court. L. R. 23 Q. B. Div. 598. It was then appealed to the House of Lords and again affirmed in Appeal Cas. for 1892, page 25. On the first appeal, BOWEN, L. J., said: "Of the general proposition, that certain kinds of conduct, not criminal in any one individual may become criminal if done by combination among several, there can be no doubt. The distinction is based on sound reason, for a combination may make oppressive or dangerous that which if it proceeded only from a single person would be otherwise, and the very fact of the combination may show

that the object is simply to do harm and not to exercise one's own just rights." In passing on the case, on final appeal, in the House of Lords (p. 38) it was conceded by the lord chancellor, "that there are many things which might be perfectly lawfully done by an individual, which, when done by a number of persons becomes unlawful." Lord BRAMWELL made the same concession in these words (p. 45): "It has been objected by capable persons, that it is strange that that should be unlawful if done by several which is not if done by one, and that the thing is wrong if done by one, if wrong when done by several; if not wrong when done by one, it can not be wrong when done by several. I think there is an obvious answer, indeed, two: one is, that a man may encounter the acts of a single person, yet not be fairly matched against several. The other is, that the act when done by an individual is wrong though not punishable, because the law avoids the multiplicity of crimes: *de minimus non curat lex;* while if done by several, it is sufficiently important to be treated as a crime." The same concession was made by Lord HANNEN, where he said (p. 60): "There are some forms of injury which can only be effected by the combination of many. Thus if several persons agree not to deal at all with a particular individual, as this could not, under ordinary circumstances benefit the persons so agreeing, it might well lead to the conclusion that their real object was to injure the individual."

But all combinations of men are, of course, by no means unlawful. Whether a combination is lawful or unlawful is ascertained by the character and purpose of the combination. It is therefore necessary to determine whether the combination evidenced by the agreement of the brewers in this case was lawful. It may be considered in twofold character; one as affecting the right of the public to unrestrained trade; and the other as affecting defendant's private rights. Its admitted purpose was to prevent any brewers from selling to any one so long as he was in debt to any of them for beer. We have already stated that being in debt was

merely unfortunate. No penalty follows such condition, nor does it involve a single right. To withdraw the right to buy from all persons in debt would, to a great degree, paralyze trade and cause much suffering. In order to properly appreciate the proposition of a right to prevent persons in debt from buying, the article in controversy in this case should be put out of view and all commodities of necessity brought into view. For if the right exists as to the article of beer, it exists as to all articles of merchandise. And if it exists as to one man it exists as to all other men in like situation. What then would be more iniquitous, or disastrous, than the proposition to prevent all persons in debt from purchasing the necessaries of life? We have no hesitation in declaring the combination wrongful and inimical to the rights of the public, as being in restraint of trade.

Did such combination as applied to defendant affect his rights? As already said, plaintiff had the right to refuse to sell to defendant. But defendant had the right to buy and plaintiff did not have the right to prevent others from selling to him by engaging them in a compact not to do so. For by so doing there was an invasion of defendant's right to buy. Each must exercise his right without infringing on the right of the other. Defendant can not construe his right to buy in such a way as to annul plaintiff's right to refuse to sell. And neither can plaintiff stretch its right to refuse to sell so as to interfere with defendant's right to buy of others. When plaintiff sought out other dealers and procured them not to sell to defendant, it got outside its own right and invaded defendant's. In the ordinary mutations of business, traders use their independent and unhampered judgment, and in consequence they are found courting the patronage of one to-day that they may have avoided yesterday. The change of opinion which, in the natural run of affairs, comes with change of situation and condition has free play when traders are left to act, each upon his own conclusion. In consequence, there would be no time when a worthy man,

though in debt, could not find some persons willing to sell him their wares. That this phase of the natural law of trade was known and recognized by the brewers is evidenced by them deeming it necessary to enter into the combined agreement to restrain it. They realized that the exercise of the right not to sell a debtor by his creditor alone would leave him free to exercise his right to buy of others, and so they each combined with the other in an agreement to punish him by absolutely cutting off his right to trade; and thus their act was in clear violation of his rights.

But in order to fix the statutory penalty of disability to collect the debt, defendant can not stop at merely showing the combination to be unlawful at common law: he must show that it is unlawful under the statute. However much the ordinary principles of law may aid in fixing the character of the combination in question, the proper construction of the statute is the primary consideration.

Section 8966 declares that all contracts and combinations made either with a view to lessen, or which tend to lessen, free and full competition in the sale of an article shall be considered void and a conspiracy to defraud. Now, did the agreement that no member of the combination would sell to any one in debt to another member, tend to lessen competition?

As before stated, the argument of counsel for plaintiff is that the agreement was one that the brewers had a right to make and that it was, therefore, not wrongful; and being a rightful agreement, its interference with competition was merely incidental and, therefore, it did not fall within the meaning of the statute. We have already, for two reasons, shown that it was not a rightful agreement and the question is thus stripped of that supposed protection from the penalties of the statute. We have already characterized the agreement as wrongful and unlawful and we will consider whether its wrongful and unlawful character is of such kind or class as to bring it within the provisions of the statute aforesaid prohibiting any combination made with a

view to lessen, or which tends to lessen free and full competition. The members of the combination would perhaps deny that they entered into the agreement with a view to lessen competition, and we will assume that they did not. But does it, *in fact,* lessen *or tend* to lessen competition?

Competition is the struggle between rivals for the same trade at the same time. It is self-evident that there can not be competition unless there is trade, and so though the popular saying is that, "competition is the life of trade," yet it is quite certain that trade is the mother of competition, for the latter springs from the former. So, therefore, whatever restrains trade restrains competition in exact degree. One of the reasons given by the Supreme Court of Massachusetts, why contracts in restraint of trade were void, was that "they prevent competition." Alger v. Thacher, 19 Pick. 51. And so the same thing is said in Beach on Monopolies and Trusts, section 36. We have already seen that the agreement and combination in question were in restraint of trade and, therefore, we must hold they tended "to lessen full and free competition," and are within the meaning of the statute. But we are not put to the necessity of showing this by deduction, for, as stated in the fore part of this opinion, the agreement struck directly at competition. The agreement was that no member of the combination should sell to a debtor of any other member. That is to say, all other members were cut out of the right to compete for the debtor member's trade.

We are cited to some cases which counsel urge in support of the legality and rightfulness of the agreement in question. None of them are in point. Those of Anderson v. United States, and Hopkins v. United States, 171 U. S. 604, 568, 579, do not reach the question involved here. Those cases merely decide (so far as bearing any analogy to this case) that where an agreement is made with no purpose or intention of restraining or affecting interstate commerce and which does not in fact restrain it (except in a remote and inci-

dental way) is not avoided by the Federal statute. But the fact remains, that whenever the effect or tendency of the agreement is, in fact, to restrain trade, then the good intention of the parties, or their object to merely secure themselves mutual protection, affords them no defense to the charge of violating the Federal statute. That the statute itself must determine what it affects. That it includes all contracts in restraint of trade whether reasonable or unreasonable (though if the business was private and there be no statute, the restraint must be unreasonable). United States v. Freight Assn., 166 U. S. 290, 327, 328, 334, 341. Affirmed in United States v. Joint Traffic Assn., 171 U. S. 505; and also by Addyston Pipe Co. v. United States, 175 U. S. 211, 241, 242, 245.

In Kentucky there was a statute similar to ours when the case of Brewster v. Millers Co., 101 Ky. 368, arose. That case was where undertakers combined and agreed not to sell to or wait upon any one in debt to any other member for burial expenses. The plaintiff's wife died, whereupon he went to the Millers to engage their services at the funeral and to purchase necessary articles for that purpose. They refused him on the ground that he was then indebted to them for burying his father. The other members of the combination or association also refused on the ground of the indebtedness to Millers. Brewster (the plaintiff) then sued the members of the association. The court decided that he had no cause of action, but expressly disclaimed deciding that the defendants were not liable to the penalties and disabilities of the statute, since the action was not one "to enforce any contract or agreement made in violation of the statute." The case of Transportation Co. v. Oil Co., 50 W. Va. 611, is not applicable. The case of Hunt v. Simonds, 19 Mo. 583, was an action for damages occasioned to the plaintiff on account of a number of insurance companies agreeing to refuse and refusing to insure his steamboat. It was held that the action could not be maintained. The action is not to be likened to the defense in this case, and besides

was without the support of a statute. Construed as plaintiff would have it, it would be out of harmony with repeated later rulings of the Supreme Court, especially that of State ex inf. v. Fireman's Ins. Co., 152 Mo. 1.

It is claimed by plaintiff that persons in trade have the right to combine for the purpose of mutual protection against dishonest debtors. That statement is made in the case of Schulten v. Brewing Co., 96 Ky. 224. While that case did not involve the violation or construction of a statute, and is altogether foreign to the questions involved in this case, yet it is not necessary for us to combat the proposition there stated. The agreement shown here was not an agreement that the brewers would not sell to dishonest debtors. On the contrary, it made no distinction and cut down the right of any who was in debt for beer to buy beer. It may be that a combination among merchants whereby they by proper means and in a lawful way, sought to protect themselves against false pretenders would not be an unlawful combination. And it may be (it is not our province now to decide) that if it was the practice of persons, dishonest and insolvent, to buy articles from dealers in merchandise, with the fraudulent intention never to pay for them, the dealers could form themselves into an association or combination and protect themselves from such preyers on the thrift of others. But a case of that kind is widely different from the one now before us. The statute, while aiming to protect the public from the evils of monopoly, was not designed to offer facilities for the cheat or fraud.

The result of the foregoing is that a recovery by plaintiff is expressly forbidden and the judgment must be reversed. The other judges concur.