EVENSON et al. v. SPAULDING et al.

(Circuit Court of Appeals. Ninth Circuit. February 4, 1907.)

1. COURTS—JURISDICTION OF FEDERAL COURT—AMOUNT IN DISPUTE.

In a suit to enjoin the wrongful and unlawful interference with complainant's business, the amount in controversy, for the purpose of the jurisdiction of a federal court, is the value of the right sought to be protected, and a general averment in the bill that the value of the matter in dispute exceeds $25,000, together with further allegations, showing the extent of complainant's business which has been interfered with, and which will be interfered with in the future, unless protected by injunction, tending to show that the value of such right sought to be protected in the future largely exceeds $2,000, are sufficient, when not denied to give the court jurisdiction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 897.

Jurisdiction of Circuit Courts, as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennet-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

2. INJUNCTION—GROUNDS—UNLAWFUL INTERFERENCE WITH COMPLAINANT'S BUSINESS.

Defendant, which was a voluntary association composed of numerous members doing business throughout eastern Washington, organized a subsidiary association known as the "Peddlers' Association" and contributed funds thereto for the purpose of "competing with the peddlers," especially those selling buggies and wagons. The association itself had no property except the fund so contributed, and the majority of its members had no buggies or wagons for sale. Complainant was a manufacturer of wagons and buggies in another state, some of which were shipped to Washington, and there sold by agents, who took a number of vehicles and drove through the country selling chiefly to farmers, and had thus built up a profitable business. Defendant, through its said subsidiary organization, entered upon a systematic course of interference with the business of complainant by employing men, usually two, to follow each agent of complainant. They stopped at the same hotels and stables, started out when he started, and followed him throughout the day to every prospective customer, and interfered with the conversation. They took no vehicles with them, and generally offered none in competition; their sole purpose appearing to be to interfere with and prevent sales by complainant's agents by means of interruptions and false statements respecting complainant and its goods and intimidating and discouraging its agents. *Held,* that such action was unwarranted upon any ground or claim of competition, and was an unlawful attempt to wantonly destroy complainant's business, and was properly enjoined.

3. PARTIES—VOLUNTARY ASSOCIATION—PARTIES BY REPRESENTATION.

A voluntary association having many members may be brought into court under equity rule 48, by service on its officers, and such of its members as are known and can be conveniently reached sufficient being served to represent all the diverse interests.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Parties, § 30; vol. 4, Associations, §§ 37, 38, 41, 42.]

4. ASSOCIATIONS—LIABILITY OF MEMBERS—ACTS OF SUBSIDIARY ASSOCIATION.

Where a voluntary association creates a subsidiary or branch association as an instrumentality through which to accomplish certain purposes, it is liable for the acts of such subsidiary association to the same extent as though such acts had been done by the entire membership.

5. EQUITY—AMENDMENTS TO BILL—MOTION FOR PRELIMINARY INJUNCTION.

Amendments to a bill, on the hearing of a motion for a preliminary injunction, and before demurrer or answer, *held* properly allowed under equity rule 28, either as relating to matters of form, or as within the discretion of the court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 559.]

Appeal from the Circuit Court of the United States for the Eastern Division of the Eastern District of Washington.

For opinion below, see 149 Fed. 913.

This is an appeal from an order granting an injunction pendente lite. The bill alleged in substance that the appellees are engaged in the manufacture and sale of buggies and wagons; that their place of manufacture is in the state of Iowa; that for many years they have been engaged in selling their buggies and wagons in other states, including the state of Washington; that they have had, during the summer season, agents and salesmen in the state of Washington who travel through the country selling buggies and wagons, especially to farmers and others residing in the rural districts; that their wagons and buggies are strong and especially adapted to the needs of farmers, and have acquired a reputation in the state of Washington as buggies and wagons of high grade and excellent quality, purchasable at reasonable prices, and that such reputation and standing of the appellees in said community in said business is of very great value to them; that a few months prior to the

filing of the bill, many of the dealers in hardware and farming implements in eastern Washington conspired and confederated together for the purpose of monopolizing such business in such section, and especially for the purpose of preventing manufacturers and dealers in hardware and farming implements residing without the limits of the state of Washington from selling any of such goods, wares, and merchandise in such state at retail, and to prevent the appellees from selling their buggies and wagons at retail to farmers and others in the rural districts: that said local dealers formed an association under the name of the "Inland Empire Implement and Hardware Dealers' Association;" that some of the members are dealers in hardware, and are not engaged in the business of selling buggies and wagons or other farming implements, while others are local dealers in farming implements; that the association includes members residing in the counties of Spokane, Lincoln, Douglas, Adams, Perry and Okanagan; that the members of such association raised a fund of $10,000, and placed the same in the hands of the appellant Evenson, to be used for the purpose of preventing the appellees from selling any buggies or wagons in eastern Washington at retail; that for several weeks last past the appellees have had about 20 employés engaged in selling buggies and wagons in eastern Washington; that their method of doing business was to drive through the rural districts hauling from two to four wagons and stopping at farmhouses and other places where customers would probably be, offering the same for sale; that before offering said buggies and wagons for sale the appellees paid the taxes thereon as provided by statute, and, in other respects, complied with the statutes of the state of Washington; that said association, through the appellants Evenson, Lucas, and Hay, unlawfully interfered with the business of the appellees, and have threatened, intimidated, harassed, and annoyed their employés, and the persons with whom they were transacting business; that they have had said employés followed day and night, so that wherever one of them went, he was dogged, sometimes by one, but generally by two of the employés of said association—some of said followers being armed with guns and rifles, some of them being unarmed; that whenever the employé of the appellees undertook to converse with a farmer or other probable purchaser, such conversation would be interrupted by the said followers, and the latter would undertake to dissuade such probable purchaser from purchasing goods of the appellees, suggesting that they ought to purchase of resident dealers who resided in the community; that the said followers were not undertaking to sell any buggies or wagons, nor did they claim to represent any competitor of the appellees or any dealer in buggies or wagons; that the sole object and purpose was in all cases to prevent the appellees from making sales, to the end that they might be driven out of business in the state of Washington; that said followers undertook and have undertaken to persuade purchasers to violate their contracts, whereby they have purchased goods from the appellees; that several of such followers, at the instance of said association, have been appointed deputy sheriffs, and one of the agents of the appellees was arrested upon a false and malicious charge of peddling goods without a license by one of the said followers so appointed a deputy sheriff, all at the instance of the association, and in furtherance of said conspiracy; that said conduct on the part of the agents of said association has been carried on for several weeks and numerous sales have been lost as a result thereof, and the employés of the appellees have become alarmed and discouraged, and will, unless said acts of said followers are stopped, quit the employment of the appellees, and the appellees will be unable to further carry on their business in the state of Washington; that, in pursuance of such nefarious scheme, the association has circulated false and slanderous matter concerning the appellees and their buggies and wagons, and have falsely stated that the latter are of inferior quality, and are being sold at a price greatly in excess of prices charged by local dealers, all of which is false and known to be false by the appellants, and that they have circulated stories to the effect that the appellees and their employés are perpetrating frauds on their customers in various ways, which the bill proceeded to set forth. The bill alleged "that there is no adequate remedy at law, that the value of the matter in dispute exceeds, exclusive of interest and costs, the sum of more than $25,000, and that your orators have been damaged

by the said acts and conduct of said defendants in excess of the sum of $25,000." After setting forth that the threatened injury would be irreparable unless stayed by the court, the bill prays for an injunction and for judgment against the appellants for $25,000 and for such further relief as shall be just and proper. With the bill affidavits were filed. Thereafter further affidavits were filed when the matter came on to be heard on the application of the appellees for an injunction pendente lite upon the bill and the affidavits of the appellees and the counter affidavits of the appellants. Upon consideration of the bill and the facts set forth in the affidavits, the court enjoined the appellants pendente lite "from preceding or following in close range any employé, agent, or servant of the complainants, or the teams used by them or any of them in such manner as to hinder, obstruct, harass, annoy, or intimidate the complainants or any of their employés in the free use of the highway, and from in any other manner occupying said highway in such a manner as to hinder, obstruct, harass, annoy, or intimidate the complainants or any of their employés in the free use thereof; also from approaching or speaking to any actual or supposed customer or customers of the complainants so long as complainants' agents or servants are personally present and engaged in selling or negotiating the sale of any buggy or wagon, for the purpose of defeating such sale by the complainants; also from resorting to any species of intimidation, force, or fraud, or any conduct that would imply intimidation, force, coercion, or fraud, for the purpose of preventing complainants from selling buggies or wagons and carrying on said business of selling buggies or wagons."

H. J. Hibschmann and Merritt, Oswald & Merritt, for appellants.
F. T. Post, A. C. Lyon, and H. H. Stipp, for the appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is earnestly contended that the court had no jurisdiction of the cause, for the reason that it did not appear from the bill that the requisite amount in controversy was involved. As we read the allegation of the amount in controversy, it is that the value of the matter in dispute exceeds $25,000, and that, in addition thereto, the appellees have been injured by the acts of the appellants in excess of the sum of $25,000. The statement of the amount involved is made under oath. It is not denied either by plea, answer, or by any affidavit. It is true that the bill does not set up the value of the appellees' business, or specifically allege the extent to which it will be damaged by the acts of the appellants, but it is clear from the averments of the bill that the matter in dispute, the value of which in the complaint is laid at more than $25,000, is the right of the appellees to conduct their business in the state of Washington. The bill sets forth the damages which have been sustained by the appellees within the few weeks prior to the commencement of the suit and presents facts, showing the extent of their business in the state of Washington, which has been interfered with, and which will be interfered with in the future unless protected by injunction. A case in point is Butchers' & Drovers' Stockyards Co. v. Louisville & N. R. Co., 67 Fed. 35, 14 C. C. A. 290, in which Judge Taft, speaking for the Circuit Court of Appeals, said:

"The averment of the bill is that the injury and damage done to its business by the refusal of the railroad company to afford to it such transportation and shipping facilities is irreparable, and largely exceeds the amount of the sum of $2,000. The damage done by the refusal is to be estimated by the value of the right denied, and therefore the allegation that the damage large-

ly exceeds $2,000 is inferentially a statement that the value of the right denied is largely in excess of $2,000. Even if this averment refers, as claimed by counsel, to damages sustained by complainant before the filing of the bill, it gives rise to the necessary implication that the subsequent permanent injury, unless enjoined, will exceed in pecuniary amount that already suffered because the past damages only covered a period between the demand and the filing of the bill."

Other cases in point are Pennsylvania Co. v. Bay et al. (C. C.) 138 Fed. 203; Board of Trade of the City of Chicago v. Cella Com. Co. (C. C. A.) 145 Fed. 28.

The affidavits sufficiently sustained the allegations of the bill and the conclusion of the court below, and showed that the appellants were pursuing a systematic course of interference with the business of the appellees in peddling buggies and wagons in the state of Washington; that as an agent of the appellees would go through the country taking in his train a number of buggies or wagons, the agents of the appellants would follow, generally in pairs in order the better to watch, harass and dog the steps of the peddler. Wherever the peddler would stop, the followers stopped; wherever he lodged, they lodged. As he started out in the morning, they were close in pursuit. Whenever he engaged in conversation with a customer, they would interrupt the conversation and advise the customer not to buy, and "to prevent trouble," the customer would often refuse to buy. The followers in nearly every instance had no vehicles of their own to offer. Their declared purpose was to prevent the appellees' agents from making sales. The result was frequent personal altercations and in one instance a fist fight. The appellees' agents were often intimidated. Some of the followers carried rifles, some of them had been made deputy sheriffs, and, in one instance, one of the appellees' agents was arrested by such a sheriff under the provision of a law which had been declared void by the superior courts of the state of Washington. The proof showed a practical destruction of the business of the appellees in the state of Washington, and that the purpose of the appellants, and it is not by them anywhere denied, was to continue in the course of action complained of. It is contended on behalf of the appellants that their acts were but the acts of competitors in business, and that they had the legal right to go upon the highways and engage in conversation with any one; and, in general, to do the acts which are complained of. This contention cannot be sustained. The association was a combination of men engaged in various lines of business. It had no property of its own save the money that was raised for the purpose of interfering with the appellees. It had not, nor had the majority of its members, any buggies or wagons for sale. It did not, as a general thing, send out such merchandise upon the road to offer it in competition with the merchandise of the appellees. Its sole object and purpose, so far as disclosed by this record, was to break up the business of the appellees in the state of Washington.

The appellants contend that their combination in itself was not unlawful, that no unlawful means were used in furtherance of it and that the damage to the appellees, if any they sustained, was the natural and unavoidable result of competition, incident to the carrying on of the appellants' business in a lawful manner. It is to be admitted that the appellees have no right to be protected against competition, and that

the appellants have the right to push any lawful trade by all lawful measures and to keep and maintain the benefit thereof, and to exclude others from participation in it if they can. But, while the appellees have no right to protection against competition, they have the right to protection against wanton and malicious interference and annoyance. It is true that the acts of interference complained of in the bill, and proved by the affidavits, were, for the most part committed upon the public highway, but the particular spot upon the highway or elsewhere where the appellees were offering their goods for sale was, for the time being, their place of business. We do not say that they had any exclusive right to be there, or that the appellants had not the right to go upon the same highway with goods and to follow the appellees' goods with like goods of their own, if they had such, and offer the same in competition with the appellees and to the same customers. But that is not what was done. The appellants' agents took with them no goods, and generally they offered none in competition. Their sole purpose appears to have been to interfere with and prevent sales by the appellees. This they accomplished by breaking in upon conversations, interrupting sales, and making false representations as to the nature of the appellees' goods, and the manner in which they treated the purchasers thereof and other offensive acts. Their purpose was not to sell goods of their own, and thereby interfere with sales by the appellees, but it was, by pursuing a policy of molestation, to drive the appellees out of business and out of the country. The right of competition furnishes no justification for such acts. This is in accordance with the decided weight of authority. State v. Huegin (Wis.) 85 N. W. 1046, 62 L. R. A. 700; Jackson v. Stanfield (Ind. Sup.) 36 N. E. 345, 23 L. R. A. 588; Van Horn v. Van Horn (N. J. Err. & App.) 28 Atl. 669; Ferd. Heim Brewing Co. v. Belinder (Mo. App.) 71 S. W. 691; Ertz v. Exchange Co. (Minn.) 81 N. W. 737, 48 L. R. A. 90, 79 Am. St. Rep. 433; Graham v. St. Charles St. R. Co. (La.) 16 South. 806, 27 L. R. A. 416, 49 Am. St. Rep. 366; Hopkins v. Oxley Stave Co., 83 Fed. 912, 28 C. C. A. 99; Standard Oil Co. v. Doyle (Ky.) 82 S. W. 271.

It is assigned as error that the court held that the appellees were entitled to an injuncion as against members of the Inland Empire Implement and Hardware Dealers' Association, who were not served, and made no appearance in the suit, the association being a voluntary association not incorporated so that it could be made a party defendant. There is an exception to the rule that such an association may not be made a defendant by suit against or service upon its officers, and that is the exception contemplated by equity rule 48, which provides that when the parties on either side are very numerous and cannot, without manifest inconvenience and oppressive delays be all brought before it, the court in its discretion, may dispense with making all of them parties, and may proceed in the suit, having sufficient parties before it to represent all the diverse interests. The bill brings the case within the exception by alleging that the membership of the association is very large, and that the appellees cannot ascertain the names of more than a few thereof. The record shows that the parties before the court were E. E. Lucas, the president of the association, and Edward W. Evenson,

the secretary, treasurer, and active manager thereof, and, in addition to these facts, it appears that the association has under its name made a general appearance in the suit. Upon the filing of the appellants" affidavits, the membership of the association was disclosed, and the appellees thereupon offered during the hearing an amendment, adding the names of many other members of the association, and embodying the names of the three members who composed what was called the "Peddlers' Committee." The peddlers' committee, it appears, was formed at a meeting of the association for the purpose of forming "some plan to compete with the peddlers." Under the plan which was adopted, each resident dealer in ranges or vehicles who belonged to the association was to be asked to pay, not into the treasury of the Peddlers' Association, but into the treasury of the Inland Empire Implement and Hardware Dealers' Association the sum of $20, and all manufacturers and jobbers in ranges and vehicles in the territory, or who solicited trade therein, were to be asked to contribute $100. The money so collected was to be used to pay expenses in offering such competition to peddlers as would enable resident dealers to hold their trade, and the adopted plan proceeded to specify the method of carrying on that competition. It appeared in the affidavit of Evenson that the branch of the defendant association known as the "Peddlers' Association" was organized by the general association. These facts show that the Peddlers' Association was the creature of the larger association and the instrumentality which it used to carry out its general purposes. The lower court so found, and we discover no error in that conclusion.

It is contended that there was error in permitting the appellees to make amendments to their bill. The first amendment was filed during the hearing, and in response to the objection that the bill did not plainly allege that the appellants threatened to continue their unlawful acts. This was an amendment in matter of form, and permissible under equity rule 28. The requirements of the rule were complied with. The second amendment was also filed during the hearing, and after the appellants had attacked the bill, on the ground that the Inland Empire Implement and Hardware Dealers' Association was a voluntary association, and that no sufficient number of its members had been made parties defendant to subject it to the jurisdiction of the court. To allow or reject this amendment was discretionary with the court, and its ruling is not reviewable here. Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426, 32 L. Ed. 800. It is contended that there is in the bill a misjoinder of causes of suit. No such objection to the bill was presented to the court below, nor is there an assignment of error based on such alleged misjoinder. The contention therefore cannot be considered here.

Complaint is made that the injunction goes further than the court was warranted in going, in that it enjoins the appellants from approaching or speaking to any actual or supposed customer of the appellees, so long as the latter's agents are personally present and engaged in selling or negotiating the sale of any buggy or wagon, for the purpose of defeating such sale. This part of the injunction, it may be conceded, trenches upon delicate ground. For the present we are not prepared to say that, in so ordering, the court below was not acting

within its discretion, or that substantial rights of the appellants were thereby invaded. The appellees had the right to offer their goods for sale, and to discuss the merits thereof, and the terms of sale. The appellants had no right to prevent them from doing this. If to interfere in conversations was tantamount to preventing the appellees' agents from conducting their business, it was an unwarranted interference.

The order for an injunction pendente lite is affirmed.