JOHN J. GLADISH, Respondent, v. KANSAS CITY LIVE STOCK EXCHANGE, Appellants.

Kansas City Court of Appeals, June 26, 1905.

1. **POOLS AND TRUSTS: Stock Exchange: Boycott.** To constitute a boycott by live stock exchange it must appear that the association have entered into a pool or trust to control or limit trade or competition therein by refusing to buy from or sell to any other person for the reason such person is not a member of the trust.

2. ———: ———: **Expelled Member: Statute: Common Law.** The purposes of a stock exchange providing for the expulsion of members guilty of commercial dishonesty and forbidding its members from having further dealings with him, are to be commended; and the rules and regulations of the Kansas City Live Stock Exchange do not come within the inhibition of the statute governing pools and trusts, nor within that of the common law.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED.

*Frank Hagerman, A. F. Smith* and *Boyle & Guthrie* for appellants.

(1) Since the organization of the Interstate Commerce Commission, commercial exchanges have received its constant recognition as suitors in its court. First Annual Report, pp. 46, 54, 55, 102, 103; Second Annual Report, pp. 108, 127, 129, 149, 153, 154, 156, 162; Third Annual Report, pp. 132, 143, 144, 145, 146, 155, 166, 169, 171, 174, 179; Fourth Annual Report, pp. 88, 100, 133, 146, 147, 149, 150, 154, 161, 169, 178, 180, 181, 184, 189, 206. (2) The lawfulness of commercial bodies of this character has been recognized by the courts in an unlimited number of cases, arising in every variety and form of litigation. Speight v. Gaunt, L. R. 9 App. Cas. 1, 10, 12, 21; 22 Ch. Div. 727; Stewart v. Canty, 8 M. & W. 160; Fletcher v. Marshall, 15 M. & W. 755; Bayliffe v. Butterworth, 1 Exch. 425; McEwen v. Woods, 11 Q. B. 13; Bowlby v. Bell, 3 C. B. 428; Pollock v. Staples, 12 C. B. 765; Hanson v. Boyd, 161 U. S. 397; Bibb v. Allen, 149 U. S. 481; Railroad v. Int. Com. Comm., 162 U. S 197, 215, 241; Railroad v. Int. Com. Comm., 100 U. S. 423, 427, 429; Railroad v. Int. Com. Comm., 105 U. S. 559, 563; Dilloway v. Alden, 88 Me. 230, 236; Prant v. Chisholm, 81 N. Y. St. Rep. 376, 379; Jackson v. Live Stock Ex., 68 N. W. (Neb.) 1051, 1053; White v. Brownell, 2 Daly 329, 336, 355, 356; Leach v. Harris, Brewst. 571, 575, 576; Irwin v. Thompson, 27 Ks. 643; Stock Yards Co. v. Mallory, 157 Ill. 554; Burke v. Fry, 44 Neb. 223; Lafond v. Diems, 81 N. Y. 507, 514. (3) The rules of commercial exchanges have been the constant subject of judicial enforcement. State v. Chamber of Commerce, 47 Wis. 670, 683, 685;

Board of Trade v. Nelson, 162 Ill. 431, 438; People v. N. Y. Coml. Assn., 18 Abb. Pr. 271; People v. Produce Exch., 149 N. Y. 401; Ex parte Haebler, 149 N. Y. 414, 425, 428; Lewis v. Wilson, 121 N. Y. 284; Dickenson v. Chamber of Commerce, 29 Wis. 45, 50, 51; Conner v. Robertson, 37 La. Ann. 814, 818; Lehman v. Feld, 37 Fed. 852; Kingsbury v. Kirwin, 9 Jones & S. 415, 454, 77 N. Y. 612; Powell v. Waldron, 97 N. Y. 328, 331; Sexton v. Coml. Exch., 10 Pa. Co. Ct. 607, 610; Blumenthal v. Chambers of Commerce, 7 Cin. Law. Bul. 327; Kershaw v. Wright, 115 Mass. 361, 365; Habbenicht v. Lissak, 78 Cal. 351, 352; Meherin v. Exchange, 117 Cal. 215; Chamber of Commerce v. Greene, 47 Pac. (Colo.) 140; People v. Board of Trade, 45 Ill. 112, 115; 116; Fisher v. Board of Trade, 80 Ill. 85; Baxter v. Board of Trade, 83 Ill. 146; Sturges v. Board of Trade, 86 Ill. 441; Pitcher v. Board of Trade, 121 Ill. 412, 419, 420. (4)   The courts recognize the rights of exchanges to limit their membership in any reasonable manner they see fit.    Metropolitan Grain Exchange v. Board of Trade, 15 Fed Rep. 847, 849, 850, 851; Bryant v. Tel Co., 17 Fed. Rep. 825, 826; Grain Exchange v. Tel. Co., 22 Fed Rep. 23; Railroad v. Stock Yards Co., 45 N. J. Eq. 50; affirmed 46 N. J. Eq. 280; Horton v. Morgan, 19 N. Y. 170, 172; Walls v. Bailey, 49 N. Y. 464, 473; Wilson v. Tel. Co., 3 N. Y. Supp. 633, 636, 637; Belton v. Hatch, 109 N. Y. 593; Hyde v. Woods, 94 U. S. 523; Board of Trade v. Nelson, 162 Ill. 431, 438. (5)   Commercial exchanges before the courts of Missouri.   Goddard v. Merchants' Exchange, 9 Mo. App. 296; Elliott v. Merchants' Exchange, 14 Mo. App. 234; Albers v. Merchants' Exchange, 39 Mo. App. 583; Albers v. Merchants' Exchange, 138 Mo. 140; Warren v. Merchants' Exchange, 52 Mo. App. 157; Farmer v. Board of Trade, 78 Mo. App. 557; State ex rel. v. Smith, 114 Mo. 180; Sec. 1156, Gen. Stats. Kansas 1889; Session Acts Missouri 1863, p. 122; Session Acts Missouri 1865, p. 260; Session Acts Missouri 1875, p. 348.   By these acts the

Merchants' Exchange of St. Louis (a grain brokers' Exchange) was incorporated with all the rules and by-laws of the former unincorporated association and unlimited power to amend them. R. S. 1899, sec. 1319.

*Lathrop, Morrow, Fox & Moore* and *Gilmore & Brown* for respondent.

(1) The plaintiff is without remedy because he has been expelled from the exchange. Ertz v. Produce Exchange, 79 Minn. 140. (2) The acts complained of constitute a legal wrong. (3) The enforcement of the rule against trading with nonmembers will be enjoined, notwithstanding defendant's claim that if the rule is illegal the presumption is that it will not be enforced. (4) The Kansas City Live Stock Exchange is an illegal combination. This is perfectly apparent from an examination of the cases in Missouri, which we have heretofore cited, to-wit: Heim v. Belinder, supra; Walsh v. Master Plumbers' Assn., supra; State ex rel. v. Packing Co., 73 S. W. 645; State ex rel. v. Packing Co., 73 S. W. 1133.

BROADDUS, P. J.—This is a proceeding by injunction against the defendants who represent the Kansas City Live Stock Exchange, a voluntary organization located and doing business at Kansas City, Missouri. The plaintiff, who was a member of the said exchange while engaged in the live stock commission business was entrusted with money by a customer to purchase a carload of calves. Plaintiff bought the calves and gave his check to the seller for the purchase price, which the drawee refused to honor for want of funds. The vendor of the cattle, not having received the purchase price, sued in replevin and recovered back the cattle, and the customer lost his money. Plaintiff at the time was insolvent and his affairs were thrown into bankruptcy. Some time after his failure charges were preferred

against plaintiff for his conduct with his said customer, upon which charges he was tried before the board of directors of the exchange for uncommercial conduct. He was found guilty and expelled from the organization. Upon his expulsion the secretary of the exchange issued a notice which was posted upon the public blackboard used for notices to members of the exchange. This notice read as follows:

"Your attention is respectfully called to the agreement signed by you that you will have no business dealings or relations with a person who has been expelled from this association because of a violation of any of the provisions of the constitution, rules or by-laws of the exchange, after notice of such expulsion has been received by you. Section 2 of Rule X."

The rule reads as follows: "Section 2. No member of this exchange shall have any business dealings or relations with a person who is under suspension from membership, or who has been expelled therefrom, because of a violation of any of the provisions of the constitution, rules or by-laws of the association, after notice of such suspension or expulsion shall have been issued by the secretary."

It was in evidence after service of said notice the members of the exchange refused to do business with the plaintiff as a live stock commission dealer. Since the service of the injunction some of the members have resumed business relations with plaintiff. After the restraining order was dissolved and said members learned of the fact, they again ceased to do business with him. Upon final hearing the court granted plaintiff's prayer for relief and gave judgment for injunction.

The object of the proceeding is to restrain defendants, representing said association, forever from enforcing the order made by defendant requiring members of the exchange to have no further dealings with plaintiff and restraining them from inflicting any penalties

of any kind or nature whatsoever upon said exchange members who may disobey said order.

The plaintiff primarily contends that the said exchange is an unlawful combination. If this is true, it necessarily follows that the judgment of the court was proper because its effect is to restrain defendants from doing an unlawful and wrongful act to the prejudice of the plaintiff. The effect of such a holding would be to put the brand of outlawry upon the exchange and to destroy it as a business organization. In order to determine this question it becomes necessary to enquire into the nature of its organization and its purposes. We quote from the constitution and by-laws of the association, viz.:

"The objects of this association are: To establish and maintain a commercial exchange, not for pecuniary gain or profit, but to promote and protect all interests concerned in the purchase and sale of live stock at the Kansas City Stock Yards; to promote uniformity in custom and usage at said market; to inculcate and enforce correct and high moral principles in the transaction of business; to inspire confidence in the methods and integrity of its members; to provide facilities for the orderly and proper conduct of business; to facilitate the speedy and equitable adjustment of disputes, and, generally, to promote the welfare of the Kansas City market." Section 1, among other things, provides that persons admitted to the privileges of the association "shall, promptly and faithfully, comply with and fulfill all business obligations into which he may enter, either with fellow members, or with other parties . . . " Section 2 provides for "trial, suspension or expulsion of any member who has been found guilty of any act of bad faith or of attempted extortion; or of any conduct whatever which, in the opinion of the board, is dishonorable or uncommercial." And it is further provided that no member of the exchange shall do business with a suspended or expelled member under the penalty of for-

feiting his membership in the association. Other provisions are made for the trial of members for violations of the rules of the exchange which are to be tried on written charges, etc.

Section 8978, Revised Statutes 1899, in part is as follows: "If any two or more persons or corporations who are engaged in buying or selling any article of commerce, manufacture, merchandise, commodity, convenience, repair, any produce or mining, or any article or thing whatever, shall enter into any pool, trust, agreement, combination, association or understanding to control or limit the trade in any such article or thing, or to limit competition in such trade by refusing to buy from or sell to any person or corporation any such article aforesaid, for the reason that such other person or corporation is not a member of or a party to such pool, trust, combination, confederation, association or understanding, or shall boycott or threaten any person or corporation for buying or selling to any other person or corporation who is not a member or a party to such pool, trust, agreement, combination . . . it shall be void under this article."

Plaintiff is not claiming that he was unjustly expelled from the association, but that under the laws of the exchange he is about to be boycotted by the members thereof, who are prohibited from dealing with him. In order to constitute the act of the association a boycott within the meaning of the statute it must appear that the persons constituting the association have entered into a pool, trust, agreement, etc., to control or limit trade in live stock; or to limit competition in such trade by refusing to buy from or sell to any other person or corporation, etc., for the reason that such other person, etc., is not a member of such trust, etc. There is nothing in defendant's organization to do either. It does not seek to limit trade, nor to limit competition by refusing to buy from or sell to others for the reason that they are not members of its association. But they can boy-

cott a member—or, rather, they can refuse to deal with him, not because he is not a member of the exchange, but because he has been found guilty and expelled from the association for his wrongdoing.

We are cited to the case of Heim Brewing Co. v. Belinder, 97 Mo. App. 64, where "certain breweries had an agreement that they would not sell to anyone indebted to either of the others for beer until he had paid that debt." It was held: "The agreement tended to establish a monopoly, deprived the debtor of the benefit of competition, and served to impose a penalty on his condition and was in conflict with the Missouri statute relating to pools and trusts." There is a broad distinction between that case and this one. There, the court was dealing with a combination in restraint of legitimate trade. The defendant had been guilty of no offence. But let us suppose the facts had been that he had sold beer to minors, or dealt without a license or violated the Sunday law. It would not do, under such circumstances, to say that the breweries did not have the right to agree that they would not aid a party to violate the law by furnishing him the means for doing so. For further illustration: If all the druggists of Kansas City should agree not to sell poison to any person other than upon the written prescription of a reputable doctor, could it be said that the agreement was an unlawful combination in restraint of trade or limiting competition? or was a boycott as contemplated by the statute? It would certainly to some extent, be in restraint of trade, as it would be an agreement to sell certain articles to a particular class of individuals to the exclusion of all others. But it would not be against public policy; but, on the contrary, it would tend to promote the health and save the lives of citizens. The object of the statute is to promote the public welfare, and not to outlaw harmless combinations, or those which are beneficial in their nature. This statute, like every other, should receive a reasonable construction. The purposes of the exchange

are to be commended. It provides for the expulsion of a member who has been proved guilty of a violation of commercial honesty and forbids its members from having further dealings with him. In other words, boycotts him for his conduct, and not because he is not a member of the association. If the association, after having expelled plaintiff as a member for converting his customer's money to his own use, and thus betraying his trust, should permit its members to continue dealings with him, it would be, in effect, holding him out to the business world as a man that could be trusted. If the association lives up to its declared purposes, "to promote and protect all interests concerned in the purchase and sale of live stock . . . ; to promote and protect uniformity in customs and usage in the transaction of business; to inspire confidence in the methods and integrity of its members . . . , and, generally, to promote the welfare of the Kansas City market," it will inspire confidence everywhere and the tendency would be to increase and not to limit competition and trade on the said market. There is nothing in the rules and regulations of the association that brings it within the inhibition of the statute, or opposed to the common law. [In re Hebler, 149 N. Y. 414; American Com. Co. v. Chicago Live Stock Exchange, 143 Ill. 210; Board of Trade v. Nelson, 162 Ill. 431; Belton v. Hatch, 109 Ill. 593.]

The case of Ertz v. Produce Exchange of Minneapolis, 79 Minn. 140, is cited as being very much like the one here. It is there held: "The fact that a dealer in produce was a member of such an association and participated in the adoption of such a constitution and by-laws does not prevent him from maintaining an action against such association and its members for damages caused by boycotting by them of his business after he was suspended for a violation of such by-laws. The acts complained of being performed after he ceased to be a member, and without his consent, the plaintiff is not *in pari delicto.*" Upon principle the case does not support

plaintiff's case. The question arose upon the sufficiency of plaintiff's petition which alleged that, "the combination, which was carried into execution, was for the sole purpose of injuring the plaintiff's business, and that. the defendants conspired to induce the plaintiff's patrons, *other than the defendants,* to refuse to deal with him." The words we have italicised makes an entirely different case. In the case at bar the offense is, that the defendants themselves, that is, the members of the association, are forbidden to deal with plaintiff. In the Minnesota decision the law as laid down in Bohn Mfg. Co.. v. Hollis, 54 Minn. 233, was approved. There, "the defendants were retail dealers and formed a voluntary association by which they mutually agreed that they would not deal with any wholesale dealer who should sell lumber to persons not dealers at the place where a. member of the association was carrying on business. The object of the association was to protect its members against sales by wholesale dealers to contractors. and consumers. In case a wholesale dealer made any such sale, and refused to make amends therefor, as provided by the by-laws of the association, its secretary was. required to notify all its members of the fact, and thereafter such members were to refrain from dealing with the offending wholesale dealer. The plaintiff (company) . . . . , a wholesale dealer, having made such a. sale, the secretary was about to send notice of the fact to all its members. Thereupon, the company commenced an action for a permanent injunction, enjoining the defendants from issuing such notices." The court held that the action would not lie.

The two Minnesota cases are against the plaintiff's. contention here and support the theory of the defendants. that their action in the premises was lawful. We think it would be hard to find the utterance of any appellate court that would condemn an association for refusing to deal with a person who stood confessed as guilty of a dishonest transaction. Nor do we believe any case

can be found where an association of persons has been restrained from forbidding its members doing business with any other class of persons, unless the object be to limit trade or competition, because such other class of persons are not members of such association. Any other conclusion would interfere with the right to contract. The object of the statute is to promote the public good and not to interfere with the freedom of the citizen, either in his individual or collective capacity, so long as his acts are free from evil consequences.

Plaintiff's case is *sui generis.* Cause reversed and petition dismissed for want of equity. All concur.