THE STATE ex rel. HADLEY, Attorney-General, Appellant, v. KANSAS CITY LIVE STOCK EXCHANGE et al. and TRADERS LIVE STOCK EXCHANGE et al.

Division One, April 1, 1908.

1. COMBINATION: Boycott: Restraint Through Fear: Demurrer. In a suit brought at the relation of the Attorney-General against a Live Stock Exchange and its members and the Traders Exchange and its members, it appears that the defendants composing the. Stock Exchange are chiefly commission merchants engaged in receiving shipments of live stock to be by them sold or otherwise disposed of as the shippers may direct, while the defendants composing the Traders Exchange are buyers of and speculators in such stock, and together they handle nearly all the live stock business in the market, and the complaint charges that the Traders Exchange has taken such action as tends to exclude all persons from buying and selling live stock coming to that market except members of that exchange and to limit competition in such trade to such members; but there is no allegation that the Stock Exchange or its members have wilfully done anything, or purpose to do anything, to so exclude others who may desire to do business with them, or to limit competition in trade, but the allegation is that the defendants composing the Traders Exchange have boycotted and are threatening to boycott the members of the Stock Exchange

if they do live stock business with any persons not members of the Traders Exchange, and the inference to be drawn is that if the members of the Stock Exchange were left free to act they would not do any of the things called unlawful in the petition. *Held*, that it is no defense for the Stock Exchange and its members to say that they were constrained to do an unlawful act for fear of losing the trade of a larger trader or group of traders, but when they are called into a court of equity to show cause why they should not be enjoined for yielding to such constraint, and it appears that the influence which is pressing them is unlawful and is within the power of the court to prevent it, equity will not leave them under the unlawful restraint and at the same time enjoin them from yielding to it, but will remove the cause, and, therefore, if the members of the Stock Exchange are refusing and unwilling to do business with any other persons than the Traders Exchange, and if the acts of the Traders Exchange amount to an unlawful influence or constraint, the court will enjoin the Traders Exchange from boycotting the members of the other exchange, and hence the demurrer of the members of the Stock Exchange was properly sustained.

2. ———: ———: **Voluntary Association: Individuals.** A mere voluntary association, for instance, the Traders Live Stock Exchange, a voluntary association of buyers of stock, can neither sue nor be sued, but a suit to break up an unlawful combination carried on by means of the association may be brought against the individuals and corporations that compose the association, and the name "Traders Live Stock Exchange" may be used to distinguish these defendants in their associated capacity.

3. ———: ———: ———: **Partners: Conspirators.** The members of a voluntary association of traders, formed for the purpose of maintaining a boycott against competing traders, are not partners in the sense of the commercial law, but where a large body of men combine for a particular unlawful purpose and agree *inter sese* to adopt a uniform course of conduct, and the body or a considerable number of them pursue the course agreed upon, they are co-conspirators—aiders, instigators and abettors of the acts done—and are therefore responsible, not only each for his own act, but each for the act of each other and for all.

4. ———: **Free Right to Trade.** Primarily it is a sound proposition that any man has the right to refuse to deal with another for any reason that seems good to him, and is not required to give a reason for his refusal; and what he has a right himself to do, he may agree with another or others to do. But that

principle has a limitation in its application. Men cannot enter into a compact or combination that results in the elimination of competition and the exclusion of other traders from a public market, and the statute forbids such a combination. It is directed against a combination to do a forbidden thing, and assumes that each individual will do on his own account what he has agreed with those in the combination to do, and that in this way the unlawful result—the combination in restraint of trade, a boycott to shut out competition—will be accomplished.

5. ———: **Petition: Demurrer.** A petition charging facts which show that the defendants, who are members of the Traders Live Stock Exchange of Kansas City, a voluntary association, have, in effect, by a compact, rules and combined effort, excluded from the stock yards all dealers in live stock except themselves, and by boycotting and threats of boycotting have intimidated commission merchants and other exchanges from dealing with any other traders except themselves, and by those means have obtained control of a public market, states a cause of action, and as a demurrer thereto admits all facts well pleaded it should be overruled.

6. ———: **Exchange: Fee.** The law makes no objection to the demanding by a voluntary association (a traders' exchange) of a fee of admission of whatever sum, but it does object to the requiring of a person going into a public market that he shall become a member of a voluntary association and enter the market and continue therein only on the terms prescribed by such association. The public market cannot be blocked to any man merely because he is not a member.

7. ———: ———: **Moral Advantages: Coercion.** There may be advantages, moral and material, not only in facilitating business but also in advancing the standard of business integrity, derived from an exchange composed of traders in a public market, yet the law is satisfied with the standard of honesty and business integrity which it has itself erected, and it recognizes the right of no man or set of men to erect for another any other standard and to coerce him to measure his conduct by it.

8. ———: **Exclusion from Market.** A voluntary association of traders cannot exclude from the public market all persons except those in the combination for no other reason than that they are not in the combination. That is a very different thing from excluding from membership in the association a member for dishonest conduct—a thing that is not forbidden.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED AND REMANDED.

Herbert S. Hadley, Attorney-General, and John Kennish, Assistant Attorney-General, for appellant.

(1) Sections 8978 and 8979 are properly within the exercise of the police power of the State, and are not in violation of the State or Federal Constitution. State ex rel. v. Firemen's Fund Ins. Co., 152 Mo. 1; Finck v. Granite Co., 187 Mo. 244; State ex rel. v. Standard Oil Co., 194 Mo. 124; Walsh v. Master Plumbers Asso., 97 Mo. App. 280; State ex rel. v. Brewing Co., 104 Tenn. 715; Waters-Pierce Oil Co. v. State of Texas, 19 Tex. Civ. App. 1. (2) The circuit court had jurisdiction to restrain and enjoin violations of the law concerning pools, trusts, conspiracies and unlawful combinations. Sec. 8979, R. S. 1899; Walsh v. Assn. of Master Plumbers, 97 Mo. App. 280; U. S. v. Trans-Missouri Freight Assn., 166 U. S. 290; U. S. v. Northern Securities Co., 193 U. S. 197; U. S. v. Elliott, 64 Fed. 27; U. S. v. Coal Dealers Assn., 85 Fed. 252. The suit was properly instituted against the defendants as voluntary associations and against the officers and members thereof. Froelich v. Musicians Mut. Ben. Assn., 93 Mo. App. 383; Walsh v. Master Plumbers Assn., 97 Mo. App. 280; U. S. v. Coal Dealers Assn., 85 Fed. 252; U. S. v. Trans-Missouri Freight Assn., 166 U. S. 290; Hunt v. Riverside Co-operative Assn., 140 Mich. 538. (3) The demurrer admits every allegation of the petition. Goodson v. Goodson, 140 Mo. 206; Shields v. Johnson, 144 Mo. 76; Hogan v. St. Louis, 176 Mo. 149; Dodson v. Lomax, 113 Mo. 555. (4) If the plaintiff was entitled to any relief upon the facts stated in the petition, the demurrer should have been overruled. Ulrici v. Papin, 11 Mo. 31; Tanner v. Railroad, 180 Mo. 1; 16 Cyc., 278. (5) The petition properly charges the Traders Live Stock Exchange, its officers and members, with a violation of section 8978, and also with the violation of section 8966,

Revised Statutes 1899, and is amply sufficient to en-
title the State to the relief prayed for.  State ex rel.
v. Firemen's Fund Ins. Co., 152 Mo. 1; State ex inf.
v. Armour Packing Co., 173 Mo. 356; State ex inf. v.
Continental Tobacco Co., 177 Mo. 13; State ex inf. v.
Standard Oil Co., 194 Mo. 124; Finck v. Granite Co.,
187 Mo. 244; National Lead Co. v. Grote Paint Co.,
80 Mo. App. 247; Froelich v. Musicians Mut. Ben.
Assn., 93 Mo. App. 383; Walsh v. Association of Mas-
ter Plumbers, 97 Mo. 280; Heim Brewing Co. v. Be-
linder, 97 Mo. App. 64; Addyston Pipe Line Co. v.
U. S., 85 Fed. 764; C. W. & C. Coal Co. v. People, 214
Ill. 21; U. S. v. Coal Dealers Assn., 85 Fed. 252; U. S.
v. Joint Traffic Assn., 171 U. S. 505; U. S. v. Swift
Packing Co., 196 U. S. 375; Ex parte Pierce, 155 Fed.
663.

*Kimbrough Stone* and *Frank Hagerman* for re-
spondent Kansas City Live Stock Exchange.

No cause of action was stated against the mem-
bers of the Live Stock Exchange.  (1)  The petition is
solely for injunctive relief.  There is no allegation
that the members of the Live Stock Exchange threaten
to do any wrong, or that any one is in danger from
any acts of theirs in the future.  The sum total of the
offending is that they, in the past, by a boycott on the
Traders Exchange, have in some instances been intim-
idated from buying from or selling to some persons
who were not members thereof.  Southard v. Morris
Canal, etc., Co., 1 N. J. Eq. 518; 10 Ency. Pl. & Pr.,
948; 16 Am. and Eng. Ency. Law (2 Ed.), 362; 1 High
on Injunctions (3 Ed.), sec. 23; Verdin v. St. Louis,
131 Mo. 26; Owen v. Ford, 49 Mo. 436; Carlin v. Wolff,
154 Mo. 543; State ex rel. v. Wood, 155 Mo. 446; Les-
ter R. E. Co. v. St. Louis, 169 Mo. 234.  (2)  The mere
fact that the members of the Live Stock Exchange
have been, at times, intimidated from dealing with cer-

tain persons, in nowise shows them to be parties to the combination sought to be enjoined.

*R. E. Ball* for respondent Traders Live Stock Exchange.

(1) The exchanges, as such, are not parties to the action. Blakeley v. Benneke, 59 Mo. 193; Ferris v. Thaw, 72 Mo. 446; Heath v. Goslin, 80 Mo. 310; Insurance Co. v. Burkett, 72 Mo. App. 1. (2) The members are not partners, and no act of one could bind the others except where expressly authorized. Mo. Bottlers' Assn. v. Fennerty, 81 Mo. App. 525; Maclay v. Freeman, 48 Mo. 234; Campbell v. Dent, 54 Mo. 325; Deyerle v. Hunt, 50 Mo. App. 541; Ashby v. Shaw, 80 Mo. 76. (3) The bill must therefore be considered with sole reference to the alleged conduct of business by each of the individual defendants. 25 Am. and Eng. Ency. Law, 1132, par. 5; Maxwell & Co. v. Edens, 65 Mo. App. 439. (4) Eliminating mere conclusions of law and regarding only substantive facts pleaded, there is no case against defendants or any of them. In re Greene, 52 Fed. 104; Storey v. Ins. Co., 61 Mo. App. 534; Bank v. Mulhall, 8 Mo. App. 558; Dannan v. Coleman, 8 Mo. App. 595; Mullanphy v. Phillipson, 1 Mo. 188; Weimer v. Shelton, 7 Mo. 237; Manker v. Faulkhaber, 94 Mo. 430; Sidway v. Mo. Land & Live Stock Co., 163 Mo. 342; Nagel v. Railroad, 167 Mo. 89; Mallinckrodt Chemical Wks. v. Nemnich, 169 Mo. 388; State ex inf. v. Railroad, 182 Mo. 284. (5) The rules of the exchange do not constitute a combination in restraint of trade or a pool, trust, monopoly or conspiracy to restrain trade or control prices, or supply of live stock. Anderson v. United States, 171 U. S. 604; Gladish v. K. C. Live Stock Exch., 113 Mo. App. 726; Arthur v. Oakes, 63 Fed. 317. (6) The rules and obedience to them having been held by the Supreme Court not to have the effect and tendency attributed

to them by the mere assertion of the pleader, that holding should be conclusive. Holmes v. Cleveland, 93 Fed. 100; Simons Co. v. Knox, 39 Fed. 702; Klobb v. Swan, 68 Md. 516; McIntosh v. Pittsburg, 112 Fed. 705; Harmon v. Auditor, 123 Ill. 132; Stalcupp v. Tacoma, 13 Wash. 141. (7) The Missouri statute is misconstrued by the relator in his pleading and brief. It does not apply to the facts stated. State ex rel. v. Associated Press, 159 Mo. 410; 26 Am. and Eng. Ency. Law (2 Ed.), 658, 652; R. S. 1899, sec. 8978; State v. Schuchman, 135 Mo. 116. (8) If the relator is justified as a matter of statutory interpretation in separating the concluding sentence from the remainder of section 8978, and is correct in the broad claim that the Legislature has undertaken to make it a crime for two or more persons to refuse to deal for a particular reason, then the Legislature has transcended its constitutional authority, and its act, if enforced, would deprive defendants of liberty and property and would so far violate the Constitution of the State and of the United States. Am. Live Stock Com. Co. v. Chicago Live Stock Exchange, 143 Ill. 210; State v. Goodwill, 33 W. Va. 179 (approved 129 Mo. 173, State v. Julow); In re Jacobs, 98 N. Y. 98 (approved 129 Mo. 177, State v. Julow); People v. Fillson, 109 N. Y. 389; State v. Julow, 129 Mo. 163; State ex rel. v. Associated Press, 159 Mo. 410; Marx & Haas v. Watson, 168 Mo. 133.

VALLIANT, P. J.—In January, 1905, the Attorney-General instituted this suit in the circuit court of Jackson county against the defendants, alleging that they had formed a pool or combination to control and limit the trade in live stock on the market of Kansas City and to limit competition in that trade, in violation of sections 8978 and 8979, Revised Statutes 1899, and of the common law, and praying an injunction to restrain them from further practice of the alleged un-

lawful conduct. The defendants are nominated in the petition as the Kansas City Live Stock Exchange, a voluntary association, and the individuals and corporations composing that association, and also the Traders Live Stock Exchange, likewise a voluntary association, and the individuals and corporations composing that association. The appearance of all the defendants was entered by their respective counsel. On the filing of the petition a temporary injunction was issued. An amended petition was filed in April, 1905. Each group of defendants, that is, those composing the Kansas City Live Stock Exchange and those composing the Traders Live Stock Exchange, filed a demurrer to the amended petition; the court sustained the demurrers, whereupon, the Attorney-General declining to plead further, final judgment for defendants was rendered, and this appeal was taken.

The only question is, does the amended petition state facts sufficient to show that defendants have committed or are in the attitude of committing acts that constitute a violation of the laws of this State commonly called the anti-trust law or laws forbidding acts in restraint of trade?

I.   There are two groups of defendants named in the petition; one is composed of those who constitute what is called the Kansas City Live Stock Exchange, the other of those who constitute what is designated as the Traders Live Stock Exchange. The difference, if any, in the character of business done by the defendants composing one of these exchanges, and that of those composing the other, is not very clearly set out in the amended petition and perhaps is not very important, but we gather from the briefs the idea that the defendants composing the Kansas City Live Stock Exchange are engaged chiefly as commission merchants to receive shipments of live stock for that market consigned to be by them sold or otherwise disposed of as

directed by the shippers, whilst the defendants composing the Traders Live Stock Exchange are buyers and speculators in such live stock. At all events the members of the two exchanges do a large business with each other, and, in accordance with the averments of the petition, they together handle practically all the live stock business in that market. The gravamen of the complaint is the members of the Traders Exchange have taken such action as tends to exclude all persons from buying and selling live stock coming to that market except members of that exchange and to limit competition in such trade to those members. We will notice more particularly presently what the amended petition charges on that point. But there is no allegation that the defendants composing the Kansas City Live Stock Exchange have wilfully done any thing, or purpose to do anything, to so exclude others who may desire to do business with them, or to limit competition in the trade, but the allegation is that defendants composing the Traders Exchange have boycotted and are threatening to boycott the members of the other exchange if they do any live stock business with any persons not members of the Traders Exchange, and the inference to be drawn is that if the members of the Kansas City Live Stock Exchange have done any of the acts complained of they have done so only by fear of the boycott. It may fairly be inferred from the amended petition that if the members of the Kansas City Live Stock Exchange were left free to act they would not do any of the things called in the petition unlawful.

When a defendant is called into court to answer the consequence of his unlawful conduct whereby a plaintiff has been made to suffer, it is no defense for him to say that he was constrained to do the unlawful act for fear of losing the custom of a large trader or group of traders, but when he is called into a court of equity to show cause why he should not be enjoined

from yielding to such constraint, and it appears that the influence which is pressing him is an unlawful influence and it is within the power of the court to prevent it, equity will not leave him under the unlawful constraint and at the same time enjoin him from yielding to it, but it will exert its power to remove the cause and then there will be no occasion for an injunction.

Therefore, if the defendants composing the Kansas City Live Stock Exchange are refusing and unwilling to do business with any other persons than members of the Traders Exchange for fear of the boycott, and if the acts of the members of the Traders Exchange amount to an unlawful influence or constraint, the right thing for the court to do is to enjoin the members of the Traders Exchange from boycotting the members of the other exchange, and that will end the trouble. Under this view of the law the demurrer of the members of the Kansas City Live Stock Exchange should be sustained.

II. In support of the demurrer in behalf of the Traders Live Stock Exchange, the point is made that it is a mere voluntary association and therefore it has no legal entity, it can neither sue nor be sued. The association as such has no legal entity and therefore can neither sue nor be sued, but in the case at bar the defendants are the individuals and corporations that compose the Exchange and the name "Traders Live Stock Exchange" merely serves to distinguish those defendants in their associated capacity.

The point is also advanced that the association is not a partnership and the members are not partners in trade. That too is true to a certain extent. The association, as its purposes are defined, lacks the essential elements of a copartnership, it is not a combination of skill and capital embarked in a definite business for mutual profit, one member cannot act for the

whole so as to bind all in a contract. And from this premise it is argued that no member is affected by any act of another member or of all the other members combined; he is responsible only for his own acts. That argument cannot, with safety, be carried to the extent that it is here sought to carry it. Granting that the members of the association are not partners in the sense of the commercial law and that one member cannot, in that sense, bind the association, still where a large body of men combine for a particular purpose and agree *inter sese* to adopt a uniform course of conduct, a course of conduct that if pursued by one individual would perhaps be of little consequence, yet if pursued by a large number would be of great consequence for good or evil, and therefore where, in pursurance of that agreement, the body of men so combined or a considerable number of them, though acting separately in each transaction, pursue the course of conduct agreed on, the law will presume that the acts committed were the result of the agreement and will hold all those who entered into the combination and agreement as instigators, aiders and abettors of the acts and therefore responsible, not only each for his own act but each for the acts of each other and for all. If this were not the law, how could a conspirator ever be held for the act of his co-conspirators?

Let the case at bar serve as an illustration; if the members of the Traders Live Stock Exchange have entered into such a combination and agreement between themselves as binds each individual and all the individual members, then, if each acting separately on his own account so far as the buying and the selling is concerned, but acting under restraint of the agreement so far as to refuse to deal with any one not a member of the association, and if by that line of conduct the live stock market is closed to all except members of the association, how could those who have ac-

complished that purpose, or who are persisting in that course, be held accountable for what they have done or be restrained from continuing in that course if each individual is to be adjudged by his act alone without regard to the influence of the agreement they all made to effect that purpose? We do not understand any of the cases cited by counsel for respondent as holding contrary to the views above expressed.

III. It is said in the argument in support of the demurrer that any man has the right to refuse to deal with another for any reason that seems good to him, and he is not required to give a reason; and, advancing a step further in that line of argument, it is said that what he has a right himself to do he may agree with another or others to do.

Primarily that proposition is sound but even that principle may be carried too far. One man may be as exclusive in his individual dealings as possible, yet not appreciably affect the general market. Unless one happens to possess unusual strength he cannot, by himself, affect what in the language of the exchange is called "corner the market." So if a buyer and speculator in the live stock market in Kansas City should refuse to buy from or sell to men composing a certain class of traders, his action would not be such an interference with the rights of the prescribed class as would materially shut them out from the market, and perhaps he might make a limited compact with others of his way of thinking that would not be such a material interference with the freedom of the market as to bring him and his associates within the limits denounced by the statute, but that would depend on the extent to which the compact goes; carried to a certain degree it might not limit competition in the market but carried further it might. The statute is not directed against individual action; it is directed against combination. But the argument is that here we have a

case where there is no combined action, because each member acts for himself, that the association, as such, neither buys nor sells, nor refuses to buy from or sell to persons of the proscribed class. The statute is directed against the combination to do the forbidden act, and it has in mind that each individual will do on his own account what he has agreed with those in the combination to do and thus the unlawful result will be accomplished.

It is the combination or agreement that results in restraint of trade that the statute denounces, whether the result is accomplished by the act of each individual on his own account doing as he agreed to do, or by the joint action of all. The result may be the same whether each individual acting for himself pursues the course marked out by the combination or whether they all join in a united transaction. It is the combination to accomplish that result that the statute is aimed to prevent.

The learned counsel for respondents refer to Anderson v. United States, 171 U. S. 604, as authority in support of the demurrer. That case has points of close resemblance to this and also points of wide difference.

That was a suit in a Federal court in Kansas City against these defendants as members composing the Traders Live Stock Exchange, charging them with being a combination in violation of the act of Congress entitled, "An Act to protect trade and commerce against unlawful restraints and monopolies," Approved July 2, 1900. The most marked point of difference between that case and this is that the decision in that case rested on a finding of the fact from the evidence that the defendants were not guilty of the acts charged, whereas here we have a demurrer to the petition which admits all the facts well pleaded.

The record in that case contained the preamble to the articles of association of the Traders Live Stock Exchange in which it was stated that its object was "to promote and protect all interests connected with the buying and selling of live stock at the Kansas City stock yards, and to cultivate courteous and manly conduct towards each other and give dignity and responsibility to yard traders" and, to that purpose, certain rules were adopted, among which were rules X, XI, and XII, which, together with rule VIII which does not appear in that record, are quoted in the amended petition in the case at bar and which we will presently more particularly note. It is sufficient for the present to say that the rules forbade the members dealing with any yard traders except themselves or with any person or concern who did so. The court in that case holds the purposes of the Exchange as set out in the preamble to be praiseworthy and finds nothing in the rules derogatory of that purpose. At page 613 the court said: "There is no evidence that these defendants have in any manner other than by the rules above mentioned hindered or impeded others in shipping, trading or selling their stock, or that they have in any way interfered with the freedom of access to the stock yards of any and all traders and purchasers, or hindered their obtaining the same facilities which were therein afforded by the stock yards company to the defendants as members of the exchange, and we think the evidence does not tend to show that the above results have flowed from the adoption and enforcement of the rules and regulations referred to."

At page 617 the court said: "The rule has no direct tendency to diminish or in any way impede or restrain interstate commerce in the cattle dealt in by the defendants. There is no tendency as a result of the rule, directly or indirectly, to restrict the competition among defendants for the class of cattle dealt in

by them. Those who are selling the cattle have the market composed of defendants, and also composed of the representative buyers of all the packing houses at Kansas City, and also the various commission merchants who are constantly buying on orders and of those who are buying on their own account. This makes a large competition wholly outside of the defendants. The owner of cattle for sale is, therefore, furnished with a market at which the competition of buyers has a broad effect. All yard traders have the opportunity of becoming members of the exchange, and to thus obtain all the advantages thereof. The design of the defendants evidently is to bring all the yard traders into the association as members, so that they may become subject to its jurisdiction and be compelled by its rules and regulations to transact business in the honest and straightforward manner provided for by them. If while enforcing the rules those members who use improper methods or who fail to conduct their business transactions fairly and honestly are disciplined and expelled, and thereby the number of members is reduced," etc., it does not amount to an unlawful restraint of interstate commerce.

We have thus quoted largely from the opinion in that case because learned counsel rely on it with confidence, but we do not consider it as justifying or excusing what the amended petition in the case at bar charges these defendants with having done and with still doing and which by their demurrer they admit they have done and are doing.

The petition in this case was filed after the decision in that case had been rendered and the Attorney-General doubtless had the opinion before him, at all events he has charged in this petition that these defendants have done and are doing acts that limit competition and restrain trade such as the court in the case above mentioned said the evidence failed to show

they were thus guilty of. The memberships of the two exchanges are set forth in the amended petition showing a large number of each and the statement is that the magnitude of their business is such that jointly they control all the live stock business that is transacted at the Kansas City stock yards. That is a statement of a fact on which if defendants so desired they might join issue. And in that connection the petition states that the Traders Exchange has adopted the following rules:

"Rule VIII. Membership in this exchange shall be one thousand dollars ($1,000), upon payment of which the secretary shall issue a certificate of membership, which shall be transferable.

"Rule X. This exchange will not recognize any yard trader, unless he is a member of the Traders Live Stock Exchange.

"Rule XI. When there are two or more parties trading together as partners they shall each and all of them be members of this exchange.

"Rule XII. No member of this exchange shall employ any person to buy or sell cattle, unless such person hold a certificate of membership in this exchange."

And the amended petition states that in conformity to the requirements of those rules the members of the Traders Exchange refuse to have any dealing in the buying or selling of live stock with the persons or corporations in that business who are not members of the exchange, for the reason only that they were not members, and that by threats of boycott they have so intimidated the members of the Kansas City Live Stock Exchange that they will not buy from or sell live stock to persons or corporations who are not members of the Traders Exchange. Then the petition states a number of specific transactions in which the Traders Exchange by boycotting and threats of boycotting in-

timidated other live stock dealers from trading with persons and corporations not members of the Traders Exchange, because not members, and by this course of conduct the defendants, the members of the Traders Live Stock Exchange, have obtained control of the market and of the price of live stock therein and have limited competition therein. If these statements are not true the defendants should deny them and let the evidence answer.

If they are true the defendants composing the Traders Live Stock Exchange have been and are violating the anti-trust laws of this State because they have in effect excluded from the market all yard traders except themselves, the effect of which is to limit competition in the trade and give them control of the market.

It is said that any yard trader may become a member of the Exchange and that therefore if anyone is shut out from the market it is only because he does not choose to enter. Perhaps it is true that anyone may become a member, although the amended petition which is our only source of information does not say so, but if so, he is admitted to what ought to be an open free market only through a door that is guarded by the Traders Exchange and only on terms prescribed, the first of which is the payment of $1,000 entrance fee. Moderate as that fee may be, in consideration of the advantages to be obtained, it is nevertheless a condition not imposed by law and, in a sense, it is a price to be paid for that which the law gives him without price. The initiation fee to some business exchanges that have come under our notice is several times $1,000 and, as no one has a right to membership in a voluntary association except on the terms prescribed by the association, there is nothing to prevent or forbid the members of the Traders Exchange increasing the amount of the fee to any sum. The law

makes no objection to the demanding by a voluntary association of a fee of admission of any sum whatever, but the law does object to the requiring of a person going into a public market that he should become a member of a voluntary association and enter the market or continue therein only on the terms prescribed by such association.

We fully appreciate what is said of the advantages, moral and material, derived from exchanges of the kind in question. When properly conducted, they not only facilitate business, but tend also to advance the standard of business integrity; still men must be free to go into them or not as they see fit, and they must not block the way of any one to a public market merely because he is not a member of the exchange. Conceding the wholesome moral influence of exchanges of this kind, still the law is satisfied with the standard of honesty and business integrity which it has itself erected and it recognizes the right of no man or set of men to erect for another any other standard and coerce him to measure his conduct by it.

The law recognizes the right of such voluntary association to expel a member for dishonest conduct and refuse thereafter to have any business transaction with him, as was the case in Mo. Bottlers Assn. v. Fennerty, 81 Mo. App. 525, and Gladish v. K. C. Live Stock Ex., 113 Mo. App. 726, but that is very different from the case now before us. To exclude one man or several men for good cause is not to be considered along with the act of excluding all persons except those in the combination for no other reason than that they are not in the combination.

The statements in the amended petition are sufficient if true to entitle the Attorney-General to the relief he asks as against the defendants composing the Traders Live Stock Exchange, therefore, the demurrer filed by them should be overruled, but the demur-

rer filed by the defendants composing the Kansas City Live Stock Exchange should be sustained.

The judgment is reversed and the cause remanded to be proceeded with according to the views herein expressed.

All concur.