FIDELITY NATIONAL BANK AND TRUST CO. OF KANSAS CITY, RESPONDENT, v. L. E. KINSFATHER ET AL., APPELLANTS.—46 S. W. (2d) 238.

Kansas City Court of Appeals.   February 1, 1932.

*Raymond G. Barnett* and *J. P. Flournoy* for respondent.

*E. C. Hamilton* for appellants.

CAMPBELL, C.—The record discloses that on November 10, 1923, defendants L. E. Kinsfather and Blanche Kinsfather executed their promissory note of that date for the principal sum of $700, due three years thereafter, payable to W. S. Flournoy, or order, at the Fidelity National Bank & Trust Company in Kansas City, Missouri, with

interest from its date at the rate of seven per cent per annum payable semiannually; that said defendants executed a deed of trust conveying land in Jackson county, Missouri, to secure the payment of the note, which deed was thereafter duly recorded; that on March 2, 1927, Jay Gould entered release upon the margin of the record of the deed of trust.

Plaintiff brought suit against the makers of the note and Margaret Kinsfather, to whom subsequently to the execution of the deed of trust the real estate therein described had been conveyed, seeking to have set aside the release, for judgment upon the note and foreclosure of the deed of trust. The cause was tried, resulting in a decree as prayed by plaintiff, from which the defendants have appealed.

The defense is payment.

It is not claimed by the defendants that payment was made directly to the payee named in the note nor to an assignee of the payee, but they do claim that payment was made to Gould & Company, a firm composed of George Gould and Jay Gould.

Defendant L. E. Kinsfather testified that shortly before the execution of the note he purchased land which was thereafter conveyed by the deed of trust; that the transaction was negotiated by George Gould; that thereafter he and his wife obtained a loan through George Gould and executed note and deed of trust in controversy; that George Gould received the money for the loan and took up three small notes.

"Q. There were three small notes? A. Yes, sir.

"Q. Against the property? A. Yes, sir.

"Q. Were they secured by deed of trust, if you remember? A. I think they was.

"Q. Who paid those notes off? A. George Gould.

"Q. And after they were paid off did he notify you? A. Yes, sir.

"Q. What was done with the balance of the money, if there was a balance, after the satisfying of these small notes that you speak of? A. George Gould gave it to me."

He further testified in direct-examination that the note in suit was written by George Gould; that interest payments were made by him at the office of Gould & Company, and that he saw such payments credited on the back of the note by a member of that firm. On cross-examination he testified that he bought the land, which is described in the deed of trust, and soon thereafter made written application to George Gould for a loan; that a few days later Gould told him that he had a party who would loan the money and to come to his office and execute the papers; that until he saw the papers he did not know the loan was to be made by W. S. Flournoy.

"Q. And you still insist that that note was written out there in your presence and the deed of trust there in your presence too? A. Yes, sir.

"Q. Who did the actual writing of it? A. I think Mr. Gould's father-in-law done most of the writing at that time.

"Q. And was that deed of trust prepared in longhand or in type-writing? A. I cannot say exactly just how it was done.

"Q. You say Mr. Gould's father-in-law did most of it; in what manner did he do his work? A. I think he done it in longhand.

.   .   .

"Q. And did he write out the note? A. No, don't think he did. I think Mr. Gould, if I remember right, I cannot just remember exactly, but I know Mr. Gould was right there at the time and he did some of the writing, but just about the writing on the note, I don't know.

"Q. Mr. Gould had a set of form blank notes there in the office that he used? A. Yes, sir.

"Q. Did he use one of those on this occasion? A. Yes, sir. . . .

"Q. And was the note that you signed there on that occasion already prepared for your signature, or was it prepared while you were waiting? A. I don't just remember that, whether it was or not.

"Q. Might have been already prepared when you got there? A. I don't hardly think it was; might have been; the filling out of it might have been.

"Q. Was the deed of trust already prepared when you got there, or was that prepared during the time you were there? A. I would not state about that neither for sure."

Margaret Kinsfather testified that she bought the property from her son L. E. Kinsfather; that the transaction was negotiated by George Gould; that she went to his office on November 10, 1926, and there paid to Jay Gould the sum of $724.50; that Jay Gould gave receipt for that amount; that at the time the payment was made she demanded that the note be delivered to her.

"Q. Now, Mrs. Kinsfather, at that time, did you ask for the note? A. Yes, sir.

"Q. And what was said? A. He said he would let me have the note the next day. . . .

"Q. Did you go the next day for it? A. Yes, sir.

"Q. And what did you find out when you went there? A. He said he did not have it yet. He said his man was sick and he couldn't get it."

The witness further testified that thereafter she sent her grandson to get the note and that he returned with a document which she at the time believed to be the genuine note.

George Gould, witness in defendant's behalf, testified in direct-examination as follows:

"Q. Now, Mr. Gould, how many years in all, according to your best recollection, did you loan money for Mr. Flournoy, money that you received from him for investment during that period that you were in business here—approximately how many years? A. Well, I don't know just how many years.

"Q. Well, was it as much as twelve or fifteen years? A. I think it was, but I couldn't say for certain. . . .

"Q. Mr. Gould, in your dealings with Mr. Flournoy, in the handling and investing of this money, just tell what the arrangements were with regard to sharing all profits or commissions between you and Mr. Flournoy? A. I don't believe I quite understand the question.

"Q. Suppose now, you made a loan for Mr. Flournoy, as you made this Kinsfather loan for $700, you charged a commission for the loan as all real estate men do? A. Yes.

"Q. Now, what part of that went to Mr. Flournoy, and what part to—what part went to you? A. I had the understanding with Mr. Flournoy I was to have one-third of the commission collected and he had two-thirds.

"Q. And that was true of not only this transaction, but of many other transactions where you were investing money for him? A. Yes, sir. . . .

"Q. Had you been transacting business for Mr. Flournoy prior to that time—speaking now of the Kinsfather loan—? A. Yes, sir; had a good deal of business for Mr. Flournoy right along, before and after that.

"Q. All told, Mr. Gould, how much money was placed by Mr. Flournoy with you for loaning during the time that you were making such loans? A. I don't know. A good many thousand dollars. Now, Mr. Gould, do you recall the question asked you, do you know how much money was placed by Mr. Flournoy with you for loaning? Did you make those answers to those questions? . . .

"Q. Did you answer my question? A. Yes, I did. . . .

"Q. You say he didn't place it with you then? A. He placed it with us after he had looked at the property. It was placed with us—that is what I understood you meant by that question. . . ."

On cross-examination he testified that Mr. Flournoy never placed money in his hands to loan; that Mr. Flournoy invariably "made his own papers and sent them to us for execution, or brought them in, and we had them executed, and he usually came to the office and took up the papers by giving us the money or a check for the money."

The plaintiff's evidence is that immediately after the execution of the note the payee named therein endorsed and delivered it to

W. S. Flournoy and John P. Flournoy, trustees of the W. H. Harrelson trust; that the trust furnished the funds to make the loan; that in March, 1925, the note was endorsed and transferred to Frank Harrelson who thereafter endorsed and delivered it to W. S. Flournoy as trustee of the trust estate of Martin Harrelson; that upon the death of W. S. Flournoy in June, 1929, the note was found among the papers of the Martin Harrelson trust and was thereupon transferred to the possession of plaintiff, the successor trustee; that the note from and after its execution was in possession of the trustees until it was transferred to Frank Harrelson.

A number of witnesses, friends and business acquaintances of W. S. Flournoy, testified that they were familiar with his handwriting; that the credits entered on the back of the note and the notation on its face "time of payment extended for three years from November 10, 1926," were in the handwriting of W. S. Flournoy.

It is claimed by the defendants that the working arrangement between Gould & Company and W. S. Flournoy "was nothing less than a partnership." This insistence is based upon the evidence of George Gould to the effect that he and W. S. Flournoy shared commissions on loans, and upon that part of the evidence of said witness which is set forth herein by questions and answers.

On cross-examination the witness Gould said that W. S. Flournoy invariably "made his own papers;" that at no time did Mr. Flournoy place money in his hands until the papers were executed.

Though we assume as true that part of the evidence of Gould upon which defendants rely, still we would not hold that W. S. Flournoy and Gould & Company were partners. There is an entire absence of evidence that Mr. Flournoy ever agreed to do anything except to make loan to client of Gould & Company. Gould & Company did not have authority to bid Mr. Flournoy to make a loan. Absent authority of one to bind the other, there was no partnership. The evidence considered in a light most favorable to defendants fails to show partnership. [State ex rel. v. Kansas City, 211 Mo. 181, 190, 109 S. W. 675; Hazell v. Clark, 89 Mo. App. 78, 84.]

It is insisted by defendants that plaintiff is estopped to deny agency "and the consequent authority of George A. Gould & Company to collect and receipt for both the interest and principal of the note in question."

In support of this insistence it is argued that the note matured on November 10, 1926; that it was paid in full on that date; that the defendants heard nothing more of it for almost three years; that the notation "time of payment extended three years from November 10, 1926," appeared upon the note; that George Gould testified that no payments of interest were made after November 10, 1926, and hence plaintiff is estopped to deny agency. It was

shown that George Gould personally did not attend to the making of any of the interest payments; that all interest payments were remitted to Mr. Flournoy by Jay Gould; that after the death of W. S. Flournoy two settlement sheets showing that two interest payments on the note had been made after November 10, 1926, were found among his papers. There is no direct evidence tending to show at whose instance the extension of time of payment of the note was granted. After the date of the extension Jay Gould remitted interest payments and, therefore, he must have known that the extension had been granted. This, however, does not show that Gould & Company was the agent of Mr. Flournoy, or that either member of said firm represented to defendants that it was such agent. There is no fact or circumstance tending to show that Mr. Flournoy or any of the note holders were guilty of wrongdoing, absent which there is no estoppel.

Margaret Kinsfather paid money to Jay Gould for the purpose of discharging a note which she knew was not in his possession. She evidently knew that her son had executed the note which she desired to pay, but there is nothing in the record to show that she knew to whom the note, by its terms, was payable.

It is clear that every essential element of estoppel is lacking. [Hefferman v. Boteler, 87 Mo. App. 316, 21 C. J. 1119.]

In support of the theory of estoppel defendants rely mainly upon the case of Thornhill v. Masucci, 202 Mo. App. 357, 216 S. W. 819. In that case the owner of the note made false entries on the back thereof after he had knowledge of the fact that the alleged agent had received payment of the note. When the note fell due the agent granted three years extension, which act the note holder ratified. There are no such facts here. It is evident from the opinion that the court arrived at the conclusion that the note holder had not acted in good faith.

It is contended that the conduct and course of dealing evidenced by the acts of Mr. Flournoy toward Gould & Company "were such as would lead any reasonable person to conclude" that Gould & Company was his agent.

In support of this insistence it is argued that L. E. Kinsfather testified that Mr. Flournoy sent the money for the consummation of the loan to Gould, and that Gould paid three small notes. It is evident from the testimony of the witness that he did not have personal knowledge on that subject. The greater weight of the evidence is that Mr. Flournoy never paid money to Gould until he "took up the papers."

The defendant L. E. Kinsfather testified in direct-examination that upon each occasion when he paid interest a member of Gould & Company produced the note and entered each payment as a credit

468

thereon. The greater weight of the evidence is that credits entered on the back of the note are in the handwriting of W. S. Flournoy, and that the note was not in the possession of Gould & Company after its execution.

The interest payment which fell due on May 10, 1929, was not paid. Plaintiff did not notify defendants of the default until on September 3, 1929. The delay in requesting payment will not defeat collection of the note. [Sewell v. Schooler, 4 S. W. (2d) 491.]

Error is assigned to the action of the court in excluding Gould & Company's office record.

The offered record was not preserved in the bill of exceptions and we, therefore, cannot consider the assignment. The decree is affirmed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The decree is affirmed. All concur.